1

2

3

4

5

6

7

8

9                          UNITED STATES DISTRICT COURT

10                          EASTERN DISTRICT OF CALIFORNIA

11

12  PENNY DOUGHERTY and DENNIS          No.  2:15-cv-01226-TLN-CKD
    DOUGHERTY,
13                                      **ORDER**
                   Plaintiffs,
14
          v.
15
    BANK OF AMERICA, N.A.; WELLS
16  FARGO BANK, N.A., AS TRUSTEE, ON
    BEHALF OF THE HOLDERS OF THE
17  HARBORVIEW MORTGAGE LOAN
    TRUST MORTGAGE PASS-THROUGH
18  CERTIFICATES, SERIES 2006-12;
    SELECT PORTFOLIO SERVICING,
19  INC.; DOES 1 through 50, inclusive,

20                 Defendants.

21

22        This matter is before the Court pursuant to Defendant Bank of America, N.A. ("BOA")

23  and Wells Fargo Bank, N.A. ("Wells"), as trustee on behalf of the Holders of the HarborView

24  Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-12 and Select Portfolio

25  Servicing, Inc.'s ("SPS") (together "Defendants") Motions to Dismiss Plaintiffs' First Amended

26  Complaint under Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 28, 30.)  For the reasons

27  set forth below, Defendant BOA's Motion to Dismiss is GRANTED IN PART and DENIED IN

28

                                          1

1  PART, and Defendants Wells and SPS' Motion to Dismiss is GRANTED IN PART and DENIED

2  IN PART.

3      **I.      FACTUAL BACKGROUND**

4      The claims in this case arise out of Defendants' alleged breach of their agreements in

5  connection with the modification of Plaintiffs' residential mortgage loan.  The residence is

6  located in Newcastle, CA 95658.  (Pls.' First Am. Compl., "FAC", ECF No. 26 ¶ 2.)

7      For clarity, the Court cites first to Defendant BOA's summary of the underlying facts, and

8  then states the more detailed allegations from the FAC.   Defendant BOA alleges as follows: in

9  November 2006, Plaintiffs obtained a $458,000 home loan from Aegis Wholesale Corporation.

10  The loan was secured by a Deed of Trust ("DOT") recorded against the property.  The DOT listed

11  Commonwealth Land Title as the trustee and Mortgage Electronic Registration Systems

12  ("MERS") as nominee and beneficiary.  On October 20, 2011, an Assignment of Deed of Trust

13  was recorded, wherein MERS transferred the beneficial interest to BOA, as successor by merger

14  to BAC Home Loans Servicing LP FKA Countrywide Home Loans Servicing LP.  On May 8,

15  2012 a Deed of Trust related to the "Keep Your Home California Program" ("KYHC") was

16  recorded against the property in favor of CalHFA Mortgage Assistance Corporation, securing a

17  Note for $16,089.03.  On April 9, 2015, a Corporation Assignment Deed of Trust was recorded

18  wherein BOA's interest in the DOT was assigned to Wells Fargo, as trustee for a securitized trust.

19  On April 14, 2015, a Substitution of Trustee was recorded, wherein Wells Fargo, as trustee for the

20  securitized trust, substituted in Clear Recon Corp. as trustee.  Clear Recon Corp. recorded a

21  Notice of Default on April 30, 2015, indicating that Plaintiffs were $33,685.97 in arrears as of

22  April 27, 2015.[1]  (*See* Def. BOA's Mot. Dism., ECF No. 28 at 10.)

23      The following are the material allegations from the FAC:  the November 2006 loan for

24  $458,000 was "a jumbo non-conforming adjustable rate negative amortization loan, whereby the

---

[1] Defendants request that the Court take judicial notice of documents associated with the subject property, which are
recorded in the Official Records of the Placer County Recorder's Office.  (ECF Nos. 29 & 30.)  These documents
include the DOT, assignments of the DOT, substitution of the trustee on the DOT, the KYHC Deed of Trust, the
Notice of Default, and a Deed of Reconveyance.  Plaintiffs do not oppose these requests for judicial notice.  The
Court will take judicial notice of these documents on the basis that they are matters of public record and are "capable
of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  *Gardner
v. American Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1196 (E.D. Cal. 2010) (citing Fed. R. Evid. 201(b)).

monthly payment would not cover the interest, and thus the difference would be added to and increase the principal each month."  (ECF No. 26 ¶ 14.)

Immediately after entering the loan, Plaintiffs began making monthly payments of $1,775 to an "entity known as Countrywide.  Countrywide was either Countrywide Home Loans, Inc. or Countrywide Financial Corporation.  Plaintiffs made monthly loan payments to Countrywide through approximately August, 2009 when they were notified future payments were to be made to an entity known as BAC.  Plaintiffs understood the entity to be BAC Home Loans Servicing LP which was a servicer subsidiary of Countrywide."  (ECF No. 26 ¶ 15.)  At all relevant times, "BAC Home Loans Servicing, LP operated as a subsidiary of [Defendant BOA]." [2]  (ECF No. 26 ¶ 16.)

At some point, Plaintiffs contacted an agent of BOA to request to change their loan to a fixed rate loan.  (ECF No. 26 ¶ 18.)  The BOA agent explained "there was no program available for a modification of [Plaintiffs] loan terms since they were current in their payments."  (ECF No. 26 ¶ 18.)  Plaintiffs continued to call BOA to inquire about converting the loan to a fixed rate, but they "were told there was no . . . modification . . . available because they were current and not in default."  (ECF No. 26 ¶ 19.)  Mrs. Dougherty started a job with the Fieldhaven Feline Rescue earning $500 per month; she performed her job duties from home so she could care for her disabled husband.  (ECF No. 26 ¶ 20.)  In January 2010, the monthly payment increased to $1,880 for two months and then to $1,850 for three months.[3]  (ECF No. 26 ¶ 22.)  In January 2010, Mrs. Dougherty lost her position with Fieldhaven.  However, Plaintiffs continued to make monthly payments.  (ECF No. 26 ¶ 23.)

In July 2010, Plaintiffs did not make their monthly payment.  (ECF No. 26 ¶ 24.) Immediately thereafter, Plaintiffs contacted BOA to notify it of the missed payment in order to apply for a modification.  (ECF No. 26 ¶ 25.)  BOA said "there was still no program available even if [Plaintiffs] missed payments and [they] must resume [their] monthly payments."  (ECF

---

[2] For convenience, the Court will refer to activity by BAC Home Loans Servicing, LP or BOA solely as activity by Defendant BOA.

[3] Per the terms of the DOT, Plaintiffs' monthly mortgage loan payment could begin to change on the first day of January 2008, "and on that day every 12th month thereafter."  (ECF No. 31–1 at 20.)

No. 26 ¶ 25.)  In August 2010, Plaintiffs resumed making a partial monthly payment of $1,700 and did not pay the full amount of $1,850, because that was the payment they could afford.  (ECF No. 26 ¶ 26.)  Plaintiffs made this payment for 14 consecutive months without objection from BOA.  (ECF No. 26 ¶ 28.)  However, in September 2011, BOA returned Plaintiffs' $1,700 payment for that month and said it would not accept any more payments that were not $1,952.56 monthly.  (ECF No. 26 ¶ 32.)  Consequently, out of fear of default, in October and November 2011 Plaintiffs made $1,952.56 monthly payments.  (ECF No. 26 ¶ 34.)

On November 15, 2011, BOA invited Plaintiffs to attend an event at the Sacramento Convention Center to discuss and apply for a loan modification.  (ECF No. 26 ¶ 35.)  At the convention, BOA granted Plaintiffs a written modification of their loan terms, which would commence in January 2012 for just over $2,000 per month.  (ECF No. 26 ¶ 36.)  Plaintiffs agreed to enter this modification despite the amount being over $1,700, because the "[BOA] agent told them there was a program known as Keep Your Home California ("KYHC") that would give [BOA] $100,000 towards a reduction of the principal, which would then result in a lower monthly payment down to about $1,700 per month."  (ECF No. 26 ¶ 38.)  Plaintiffs signed the BOA modification documents, and thereafter a BOA agent led them "to the KYHC table to fill out the paperwork to obtain the $100,000 Principal Reduction Program."  (ECF No. 26 ¶ 39.)  "The KYHC representative confirmed to plaintiff that [BOA] was a participant in the program and all they had to do was submit the forms online which [Plaintiffs] did immediately."  (ECF No. 26 ¶ 40.)  A BOA representative told Plaintiffs that their monthly loan payment of $1,700 would begin in approximately January 2012.  (ECF No. 26 ¶ 41.)

On November 30, 2011, BOA sent a letter to Plaintiffs, notifying them that their loan had been sold to an unknown entity (which Plaintiffs later learned was Defendant Wells) and that SPS would be the new servicer for that entity.  (ECF No. 26 ¶ 42.)  In December 2011, Plaintiffs contacted SPS and "spoke to [its'] authorized agent Debra Shrowder" to inquire about the status of their loan modification.  (ECF No. 26 ¶ 43.)  Shrowder "told plaintiff she would look into the status of the $100,000 from KYHC and also asked plaintiff to send her the [BOA] approval papers for the loan modification which plaintiff did send to her.  Shrowder also told plaintiff in

1  this initial conversation not to make any payments to SPS until they resolve the issue." (ECF No.
2  26 ¶ 43.)

3       In January 2012, Shrowder told Plaintiffs that SPS had received written confirmation of
4  the modification; however SPS was not going to honor it "because [SPS was] not yet a participant
5  in the KYHC program but [was] applying to become one." (ECF No. 26 ¶ 44.) Shrowder told
6  Plaintiffs "the owner of the loan was a participant in an aspect of the KYHC program known as
7  the loan reinstatement program whereby only the past due payments are covered by KYHC and
8  not yet the KYHC program whereby $100,000 is given to the lender to reduce the principal.
9  (ECF No. 26 ¶ 47.) Shrowder told Plaintiffs they were approved for $16,000 through the KYHC
10 reinstatement program, which "SPS would receive and accept . . . which would make the loan
11 current." (ECF No. 26 ¶ 52.) Additionally, Shrowder instructed them to submit a Home
12 Affordable Modification Program ("HAMP") application as a sign of goodwill, pending SPS'
13 membership in the KYHC principal reduction program. (ECF No. 26 ¶ 48.) Plaintiffs consented
14 to SPS's applying $16,000 to their past-due amount through the KYHC reinstatement program,
15 and Plaintiffs also submitted a completed HAMP application. (ECF No. 26 ¶¶ 50, 52.) "For
16 three months thereafter in 2012 plaintiff made numerous calls to SPS to inquire as to the status of
17 the . . . modification agreement, as well as both the KYHC and the HAMP application." (ECF
18 No. 26 ¶ 51.) "Plaintiffs were told repeatedly everything was still pending and to submit certain
19 financial records that they had already submitted or to send in updated bank statements." (ECF
20 No. 26 ¶ 51.)

21      Sometime thereafter, Shrowder told Plaintiffs that they were approved for the KYHC loan
22 reinstatement program for $16,000. (ECF No. 26 ¶ 52.) Shrowder told Plaintiffs that despite this
23 approval, beginning April 1, 2012, Plaintiffs had to pay $1,952.56 until either SPS became a
24 member of the KYHC principal reduction program or until SPS approved Plaintiffs' HAMP
25 application. (ECF No. 26 ¶ 53.) Shrowder told Plaintiffs that she would ask the investor for an
26 "in-house" modification. (ECF No. 26 ¶ 54.) "Shrowder promised [P]laintiffs that if they
27 complied with these demands, which included making $1,952.56 monthly payments and allowing
28 SPS to receive the $16,000 from the KYHC reinstatement program, they would have their loan

modified down to the $1,700 monthly amount," independent of their HAMP application or SPS' entry into the KYHC principal reduction program. (ECF No. 26 ¶ 55.) Thereafter, Plaintiffs made monthly payments of $1,952.56 per month for eight months. (ECF No. 26 ¶ 57.) To make the $1,952.56 monthly payments, they had to cease paying their insurance policies for Long Term Care. (ECF No. 26 ¶ 58.) However, due to frustration that SPS had still not modified their loan, Plaintiffs did not make their monthly payments in December 2012 or January 2013. (ECF No. 26 ¶ 59.)

In or around February 2013, Shrowder asked Plaintiffs what payment they could afford. (ECF No. 26 ¶ 60.) Plaintiffs stated they could afford $1,700 monthly payments, and consequently, Shrowder placed Plaintiffs in a six month plan whereby Plaintiffs would pay $1,700 per month "pending further response to the above described agreements and promises, as well as the in house permanent modification which had been promised." (ECF No. 26 ¶ 61.) Plaintiffs continued to make a $1,700 monthly payment continuously until September 2014. (ECF No. 26 ¶ 62.)

In September 2013, Plaintiffs became aware that Wells became a participant in the KYHC principal reduction program. (ECF No. 26 ¶ 64.) Plaintiffs immediately applied for the principal reduction through KYHC. (ECF No. 26 ¶ 65.) In October 2013, KYHC informed Plaintiffs "they were approved pending documentation from SPS." (ECF No. 26 ¶ 66.) SPS delayed in providing KYHC the requisite information necessary to fund the principal reduction, resulting in KYHC denying Plaintiffs the remaining $84,000 balance.[4] (ECF No. 26 ¶ 67.)

Additionally, since May 2014 SPS has not placed Plaintiffs in a HAMP modification, which apparently would modify their loan to $1,700 per month, and instead SPS "offered to place them into trial payment at the approximate $2,200 per month rate." (ECF No. 26 ¶ 68.)

In summary, the Court takes the following allegations to be Plaintiffs essential claims against Defendant BOA: (1) In or around 2009, BOA's statement that Plaintiffs had to be behind

---

[4] The FAC explains: "At the same time plaintiffs were placed into the forebearance in January 2013, Shrowder told them Wells Fargo was still becoming a participant in the KYHC $100,000 principal reduction program and through it plaintiffs would be eligible for an $84,000 reduction since they had already received the $16,000 payment described above." (FAC ¶ 63.)

6

1   in their monthly payments to qualify for a loan modification was misleading and inaccurate; (2)

2   from August 2010 to September 2011, BOA's act of accepting Plaintiffs $1,700 monthly

3   payments for 14 months constituted a permanent modification, and BOA's subsequent act of then

4   ceasing to accept a $1,700 payment constituted a breach of contract; and (3) BOA failed to ensure

5   that Wells and SPS honored the modifications discussed between Plaintiffs and BOA in

6   November, 2011 (FAC ¶¶ 35–42), or to ensure that Plaintiffs would receive funds from the

7   KYHC principal reduction program.

8       Against Defendants Wells and SPS, the essential claims are as follows: (1) SPS failed to

9   honor the modifications discussed between Plaintiffs and BOA in November 2011, or to ensure

10  that Plaintiffs would receive funds from the KYHC principal reduction program; (2) SPS

11  continued to delay in processing Plaintiffs' various loan modification applications, including the

12  KYHC principal reduction application and HAMP application; (3) SPS failed to submit

13  documents to KYHC, resulting in KYHC denying them a principal reduction; and (4) generally,

14  Defendants Wells and SPS did not provide Plaintiffs a permanent loan modification or facilitate

15  that process.

16      **II.    PROCEDURAL HISTORY**

17      On April 28, 2015, Plaintiffs filed a Complaint in the Superior Court of Placer County.

18  (ECF No. 1 at 2–25.)  On June 8, 2015, Wells and SPS filed a Notice of Removal to this Court.

19  (ECF No. 1.)  On June 15, 2015, Wells and SPS filed a Motion to Dismiss.  (ECF No. 6.)  On

20  July 1, 2015, BOA also filed a Motion to Dismiss.  (ECF Nos. 14; *see* Amended Motion to

21  Dismiss, ECF No. 20.)  Before the Court ruled on these motions, on July 6, 2015, Plaintiffs filed

22  the instant FAC.  (ECF No. 26.)  On July 15, 2015 BOA filed a Motion to Dismiss.  (ECF No.

23  28.)  On July 20, 2015, Wells and SPS filed a Motion to Dismiss.  (ECF No. 30.)  On August 13,

24  2015, Plaintiffs filed Oppositions to both motions.  (ECF Nos. 33, 34.)  On August 20, 2015, both

25  BOA and Wells / SPS filed replies.  (ECF Nos. 35, 36.)

26      In the FAC, Plaintiffs allege six causes of action against all Defendants: (1) Intentional

27  Misrepresentation; (2) Negligent Misrepresentation; (3) Breach of Contract; (4) Negligence; (5)

28  Intentional Infliction of Emotional Distress ("IIED"); and (6) Violations of Business and

1  Professions Code § 17200, et seq.

2      **III.**   **STANDARD OF LAW**

3      A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure

4  12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

5  2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain

6  statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556

7  U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the

8  defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic*

9  *v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice

10  pleading standard relies on liberal discovery rules and summary judgment motions to define

11  disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*,

12  534 U.S. 506, 512 (2002).

13      On a motion to dismiss, the factual allegations of the complaint must be accepted

14  as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of

15  every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.

16  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not

17  allege "'specific facts' beyond those necessary to state his claim and the grounds showing

18  entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

19  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

20  defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S.

21  544, 556 (2007)).

22      Nevertheless, a court "need not assume the truth of legal conclusions cast in the

23  form of factual allegations." *United States ex rel. Chunie v. RingrosHee*, 788 F.2d 638, 643 n.2

24  (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more

25  than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A

26  pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

27  elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

28  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").  Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]"  *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.  *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]"  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

IV.   ANALYSIS

A. **BOA's Motion to Dismiss**

a.  **Statute of Limitations**

BOA contends the following claims are time barred: (1) intentional misrepresentation; (2) negligent misrepresentation; and (3) negligence.  BOA asserts that the statute of limitations for an intentional misrepresentation claim is three years, two years for a negligent misrepresentation claim, and two years for a negligence claim.  (ECF Nos. 28 at 4, 11.)  Plaintiffs do not dispute that these are the appropriate statutes of limitations; however, they dispute the correct accrual dates for the above three claims.  (ECF No. 26 ¶ 46.)  Plaintiffs filed their original complaint on April 28, 2015.  (ECF No. 1 at 9.)  Consequently, for a claim with a three-year statute of limitations, the accrual date cannot precede April 28, 2012. For a claim with a two-year statute of limitations, the accrual date cannot precede April 28, 2013.

*1.  Intentional Misrepresentation*

As stated in California's Code of Civil Procedure § 338, a cause of action for fraud must be brought within three years, although "[t]he cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud."  Cal. Civ. Proc. Code § 338(d).  This discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999).  Accordingly, "[a] plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights." *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1111 (1998). To rely on a claim of delayed discovery, a plaintiff must allege facts showing that the basis of the claim could not have been discovered earlier, even in the exercise of reasonable diligence, and identifying how and when plaintiff discovered the fraud. *Briosos v. Wells Fargo Bank*, No. C 10–02834 LB, 2011 WL 1740100, at *4 (N.D. Cal. May 5, 2011).  *See also Fox v. Ethicon Endo-Surgery.,* 35 Cal. 4th 797, 808 (2005) ("plaintiff claiming application of the discovery rule must plead facts showing "the inability to have made earlier discovery despite reasonable diligence").

10

1    BOA argues that the accrual occurred in December 2011, because that is when Plaintiffs

2    last had contact with BOA.  (ECF Nos. 28 at 4–5.)  Thus, BOA states that "the very latest

3    Plaintiffs could have brought an intentional misrepresentation claim against [BOA] is December

4    2014 and the very latest they could have brought a negligent misrepresentation claim was

5    December 2013."  (ECF No. 28 at 5.)  Plaintiffs respond that they did not become aware of the

6    fraudulent nature of BOA's conduct until May 2014.  (ECF No. 33 at 3.)  Among other

7    agreements with Defendants, it appears Plaintiffs argue that because they relied on an agreement

8    with SPS to honor the prior KYHC principal reduction program and an agreement to modify their

9    loan to $1,700 monthly payments, Plaintiffs did not become aware that they would never receive

10   these modifications until SPS denied them the $84,000 principal reduction in May 2014.  (ECF

11   No. 33 at 4.)  Therefore, Plaintiffs allege their claims accrued in May 2014.

12       The Court finds the FAC adequately alleges that Plaintiffs exercised "reasonable

13   diligence" through at least April 28, 2012, in attempting to discover whether they would receive

14   various loan modifications and/or a KYHC reduction.  *Fox*, 35 Cal. App. 4th at 797.  Specifically

15   regarding the KYHC reduction, Plaintiffs allege they met a BOA representative at a convention in

16   November, 2011, who discussed the KYHC program with Plaintiffs and directed them to fill out

17   the necessary paperwork.  A KYHC representative then told Plaintiffs to anticipate a principal

18   reduction, and a BOA representative (it appears Plaintiffs state this also occurred at the

19   convention) told Plaintiffs "their first $1,700 payment would be in or about January, 2012."

20   (ECF No. 26 ¶ 41.)  Subsequently, at the end of November 2011, BOA sent a letter informing

21   Plaintiffs their loan had been sold and SPS would be the new servicer.  Plaintiffs allege they had

22   sought and received assurances from SPS until May 2014 that the KYHC principal loan reduction

23   would take effect.   As a general matter, the FAC contains allegations that Plaintiffs sought

24   clarification regarding their loan through 2014.  (*See* ECF No. 26 ¶¶ 37–42, 52–68.)

25       Plaintiffs have to show only that the accrual date was April 28, 2012 or later, given that

26   the Complaint was filed three years later on April 28, 2015.  It is a tenable position that Plaintiffs

27   would not discover alleged misrepresentations by BOA until after this date, given that their loan

28   had been sold and they were assigned a new servicer shortly after the November 2011

11

1    convention, at which they learned about the KYHC program and any related modifications.

2    Plaintiffs have adequately pleaded facts to withstand dismissal on statute of limitations grounds.

3    Thus, the Court DENIES BOA's motion to dismiss the intentional misrepresentation cause of

4    action as time barred.

5                                    *2.   Negligence*

6          Defendants submit, and Plaintiffs do not dispute, that the statute of limitations for the

7    instant negligent misrepresentation and general negligence claims is two years.  *See Ventura*

8    *County Nat. Bank v. Macker*, 49 Cal. App. 4th 1528, 1531 (1996) (holding that in an action

9    against accountants for negligent misrepresentation, the statute of limitations was two years); Cal.

10   Code Civ. P. § 339(1).  "Under the general rule, a cause of action accrues when, under the

11   substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent

12   liability arises. In other words, it accrues when the cause of action is complete with all of its

13   elements." *Norgart*, 21 Cal. 4th at 383.  Thus, with respect to negligence, the statute of

14   limitations does not accrue until the plaintiff sustains an injury because "the mere breach of a . . .

15   duty does not suffice to create a cause of action for negligence." *Sahadi v. Scheaffer*, 155 Cal.

16   App. 4th 704, 715 (2007).

17         As stated, BOA argues that the date of accrual was December 2011 when Plaintiffs last

18   had contact with BOA, while Plaintiffs argue they did not discover BOA's alleged negligence

19   until May 2014.  For the same reasons stated above, Plaintiffs adequately allege that they did not

20   know of these causes of action until they were officially denied a principal reduction by KYHC in

21   May 2014.  (ECF No. 26 ¶ 67.)  Plaintiffs allege that they relied upon Wells and SPS adopting the

22   loan modifications they had discussed with BOA in November 2011, once Wells and/or SPS

23   became a participant in the KYHC principal reduction program.  (ECF No. 26 ¶¶ 35–44.)

24   Plaintiffs allege they were informed in September 2013 that Wells became a participant, and that

25   the KYHC program informed Plaintiffs in October 2013 that they were "approved pending

26   documentation from SPS." (ECF No. 26 ¶¶ 64–66.)  They allege they received a denial from

27   KYHC in May 2014.  (ECF No. 26 ¶ 67.)  Overall, the FAC contains enough allegations that

28   Plaintiffs sought clarity regarding loan modifications through May 2014.  Based on these

                                         12

1    allegations, because Plaintiffs filed their claim on August 28, 2015, they timely filed within the

2    two year statute of limitations that began in May 2014.

3         Therefore, BOA's Motion to Dismiss Plaintiffs' negligence causes of action as time

4    barred is DENIED.

5                    **b.  Sufficiency of the Allegations in the FAC**

6                    *1.  Intentional Misrepresentation and Negligent Misrepresentation (First and*

7                         *Second Causes of Action)*

8         "In all averments of fraud or mistake, the circumstances constituting fraud or

9    mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Therefore, in an action based on

10   state law, while a district court will rely on state law to ascertain the elements of fraud that a party

11   must plead, it will follow Rule 9(b) in requiring that the circumstances of the fraud be pleaded

12   with particularity." *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 997 (N.D. Cal. 2009); *see*

13   *also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). "[W]hen the claim is

14   'grounded in fraud,' the pleading of that claim as a whole is subject to Rule 9(b)'s particularity

15   requirement." *Marolda*, 672 F. Supp. 2d at 997 (citing *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d

16   1097, 1104 (9th Cir. 2003)).  Rule 9(b) requires the plaintiff to allege "the who, what, when,

17   where, and how" of the alleged fraudulent conduct.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th

18   Cir. 1997).  A plaintiff must describe the alleged fraud in specific enough terms "to give

19   defendants notice of the particular misconduct so that they can defend against the charge."

20   *Kearns*, 567 F.3d at 1124.

21        Under California law, the elements of intentional misrepresentation are: "(1)

22   misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

23   (scienter); (3) intent to defraud; (4) justifiable reliance; and (5) resulting damages." *Vess*,  317

24   F.3d at 1105.  "The elements of negligent misrepresentation are similar to intentional fraud except

25   for the requirement of scienter; in a claim for negligent misrepresentation, the plaintiff need not

26   allege the defendant made an intentionally false statement, but simply one as to which he or she

27

28

                                              13

1    lacked any reasonable ground for believing the statement to be true."[5]  *Charnay v. Cobert*, 145

2    Cal. App. 4th 170, 184 (2006); *see also id.* (citing *Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th

3    1226, 1239, n. 4 (1995)) (stating that negligent misrepresentation is a species of the tort of deceit

4    and like fraud, requires a misrepresentation, justifiable reliance and damage).

5                                        *i.  Misrepresentation*

6             Plaintiffs allege that in or around 2009, BOA said it could not modify their loan unless

7    they were in default (ECF No. 26 ¶ 72(i)), which Plaintiffs contend is inaccurate and a

8    misrepresentation because "HAMP guidelines had no requirement that a loan be in default in

9    order to be eligible for modification."  (ECF No. 26 ¶ 72(viii).)  In addition, Plaintiffs state that

10   while BOA promised to apply the KYHC principal reduction program of $100,000 to Plaintiffs

11   loan and consequently lower their payment to $1,700 a month, BOA never intended to modify

12   their loan, because "[BOA] never provided KYHC with documents required to ensure the funds

13   would be received, or to ensure that the subsequent servicer was aware of the [KYHC principal

14   reduction program]."  (ECF No. 33 at 8.)

15            BOA argues that Plaintiffs fail to identify the name of any BOA representative who

16   allegedly made the misrepresentations to Plaintiffs.  (ECF No. 28 at 15.)  However, Plaintiffs

17   have provided specific allegations concerning BOA's practices with regard to Plaintiffs loan

18   modification process and specific statements that BOA made about how to obtain a loan

19   modification.  (ECF No. 26 ¶ 18.)  Plaintiffs have also provided the specific date, location, and

20   statements by BOA regarding their loan modification and KYHC principal reduction agreements

21   in November 2011, at the Sacramento convention center.  (ECF No. 26 ¶¶ 35–41.)  These

22   allegations contain enough information to identify the circumstances constituting fraud so that

23   BOA can prepare an adequate answer.  *Walling*, 476 F.2d at 397; *see Gabali v. OneWest Bank,*

24   *FSB*, No. 5:12–cv–02901 EJD, 2013 WL 1320770, at *3 (N.D. Cal March 29, 2013) (although

25   plaintiff did not provide the specific identity of the individuals who made the misrepresentation,

26   she provided sufficient factual allegations to put defendant on notice of the particular claim); *see*

27   _____

28   [5] In its motion to dismiss, BOA combines its discussion of the intentional/negligent misrepresentation claims.  (ECF No. 28 at 13–17.)

                                                    14

1   *also Jordan v. Paul Financial, LLC*, 745 F. Supp. 2d 1084, 1096 (N.D. Cal. 2010) (while the

2   plaintiff did not provide the precise identities of the employees responsible, the fraud claim still

3   met the particularity standard under Rule 9(b), because the defendants possessed the superior

4   knowledge of who was responsible for the misrepresentation).  The Court will also construe said

5   allegations to constitute a claim that, alternatively, BOA lacked a reasonable ground for making

6   the aforementioned assertions regarding a loan modification.  *Charnay*, 145 Cal. App. 4th at 184.

7   Thus, these allegations are sufficient to meet the misrepresentation element for an

8   intentional/negligent misrepresentation claim at the pleading stage.

9                                    *ii.   Knowledge of Falsity*

10          As to the third element, knowledge of falsity, Plaintiffs allege in the FAC that "BOA

11   knew, or should have known, that HAMP guidelines had no requirement that a loan be in default

12   in order to be eligible for modification."  (ECF No. 26 ¶ 72(viii).)  Plaintiffs allege they were

13   directed to a KYHC modification by BOA; however, "BOA, and thereafter SPS, acted with the

14   purpose of delaying the modification process and stringing Plaintiffs along for the purpose of

15   increasing ar[r]ears, fees, and costs."  (ECF No. 26 ¶ 72(ix).)  Plaintiffs also summarize their

16   position in their opposition as:  BOA "never intended to offer Plaintiffs the $1,700 monthly

17   payments that they were promised regardless of whether the KYHC funds were ever received."

18   (ECF No. 33 at 8.)  Thus, in summary, Plaintiffs allege BOA stated they would receive various

19   modifications while knowing that they (BOA) did not intend to put these modifications into

20   effect.  As to negligence, the Court will construe the allegations as a whole to state that BOA

21   represented they intended, or had the ability, to enact various modifications, while lacking a basis

22   for making these representations.  *See Charnay*, 145 Cal. App. 4th at 184 (a plaintiff must allege

23   defendant made a statement "which he or she lacked any reasonable ground for believing the

24   statement to be true").  For example, Plaintiffs allege they were directed to a KYHC modification

25   by BOA and that "this $100,000 from KYHC was certain because [BOA] was a participant in the

26   KYHC program."  (ECF No. 26 ¶ 38.)   However, Plaintiffs allege BOA transferred the

27   ownership/servicing of their loan to Defendants Wells Fargo and SPS shortly after it had so

28   advised Plaintiff, without ensuring Plaintiff would receive those funds.  It is undisputed that

                                                    15

1   Plaintiffs never received the allegedly promised $100,000 principle reduction.  Plaintiffs allege,

2   more generally, that they were in repeated contact with BOA regarding their loan in 2010–2011,

3   and were led to believe some form of permanent modification would take effect.  (ECF No. 26 ¶

4   27–30.)  As such, Plaintiffs have pleaded facts to support an allegation that BOA made statements

5   while lacking a reasonable basis for them, in connection with Plaintiffs' loan.  Therefore,

6   Plaintiffs have adequately pleaded the "knowledge of falsity" element for intentional and

7   negligent misrepresentation claims.

8   *iii.  Intent to Defraud*

9          Plaintiffs allege BOA intentionally contrived excuses to "avoid having to offer Plaintiffs

10  a permanent modification."  (ECF No. 26 ¶ 72(ix).)  "[BOA] acted with the purpose of delaying

11  the modification process and stringing Plaintiffs along for the purpose of increasing arrears, fees,

12  and costs, all of which would be recovered by [] BOA."  (ECF No. 26 ¶ 72(ix).)  BOA would then

13  be able to recover these arrears, fees, and costs upon the actual foreclosure of the Subject

14  Property.  (ECF No. 26 ¶ 72(ix).)  Thus, in summary, Plaintiffs allege BOA represented it would

15  carry out multiple modifications, but made those representations in order to collect associated

16  expenses.  Therefore, Plaintiffs adequately allege the "intent to defraud" element.

17  *iv.  Justifiable Reliance*

18         Plaintiffs contend they meet the justifiable reliance element because they reasonably

19  relied on the representations made by BOA with the hope that BOA would grant their November

20  2011, loan modification application and the KYHC principal reduction application.  (ECF No. 26

21  ¶¶ 82–85.)  Plaintiffs claim their reliance on BOA's representations was reasonable because BOA

22  was the servicer of the loan and had the ability to grant Plaintiffs loan modification, and BOA

23  held itself out as the entity that could provide the criteria for qualifying for a modification.  (ECF

24  No. 26 ¶ 82.)  For example, Plaintiffs allege: "The [BOA] agent told plaintiffs this $100,000 from

25  KYHC was certain because [BOA] was a participant in the KYHC program."  (ECF No. 26 ¶ 38.)

26  "After signing the BOA modification documents … the [BOA] agent directed plaintiffs to the KYHC

27  table to fill out the paperwork to obtain the $100,000 Principal Reduction Program."  (ECF No. 26 ¶

28  39.)  "The KYHC representative told plaintiffs to anticipate funding of the $100,000 to [BOA] within

1    about  weeks and the [BOA] representative told plaintiffs that their first $1,700 payment would begin

2    in or about January 2012."  (ECF No. 26 ¶ 41.)  Plaintiffs also allege they relied on BOA's act of

3    accepting their $1,700 monthly payment for 14 months without dispute to be a permanent loan

4    modification.  (ECF No. 26 ¶ 84.)

5          As to Plaintiffs relying on BOA accepting their partial payment, BOA argues that this

6    reliance is unjustified, because "[BOA's] acceptance of the partial payments . . . were all

7    expressly contemplated and permitted under the DOT signed by Plaintiffs."  (ECF No. 28 at 16.)

8    The DOT states: "Lender may accept payment or partial payment insufficient to bring the Loan

9    current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or

10   partial payments in the future."  (ECF No. 28 at 16.)  This provision of the DOT expressly

11   allowed BOA to accept partial payments and maintain its right to seek fees associated with each

12   partial payment.  Accordingly, Plaintiffs' reliance on BOA accepting their partial payments for 14

13   months was not justifiable because of the express terms within the DOT.  However, as to

14   Plaintiffs remaining reasons for their justifiable reliance, particularly BOA's statements regarding

15   Plaintiffs loan modification and the KYHC application in November 2011, these reasons are

16   sufficient to meet the justifiable reliance requirement for intentional/negligent misrepresentation.

17                         *v.   Resulting Damages*

18         Finally, Plaintiffs allege the damages they sustained as a direct and proximate result of

19   BOA's conduct were "a potential loss of their ownership interest in the subject property, damage

20   to their credit, fees and penalties, and increased interest and arrears that they would not have

21   otherwise incurred."  (ECF No. 26 ¶ 89.)  Defendants respond that any increase in arrears or

22   interest are a result of Plaintiffs own voluntary decision to make partial payments.  (ECF No. 28

23   at 8.)  However, Plaintiffs allege that these arrears, fees, and costs would not have been incurred

24   had they not been told to allow the loan to go into default in order to qualify for a loan

25   modification program.  (ECF No. 26 ¶ 89.)  Additionally Plaintiffs allege, "Plaintiffs spent time

26   and money engaging in the modification process and gave defendants access to personal financial

27   data that they were otherwise not entitled to receive."  (ECF No. 26 ¶ 90; *see Alimena v. Vericrest*

28   *Financial, Inc.*, 964 F. Supp. 2d 1200, 1213 (E.D. Cal. 2013) (reasoning a plaintiff may recover

                                            17

1   compensation for time and effort expended in reliance on a defendant's misrepresentation).  Based

2   on the foregoing facts, Plaintiffs have met the resulting damages element for intentional/negligent

3   misrepresentation at the pleading stage.

4        In sum, Plaintiffs have adequately pleaded intentional/negligent misrepresentation at this

5   stage.  Consequently, BOA's Motion to Dismiss Plaintiffs First and Second Causes of Action is

6   DENIED.

7                    *2. Breach of Contract (Third Cause of Action)*

8        A cause of action for breach of contract under California law has the following elements:

9   (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach,

10  and (4) the resulting damages to plaintiff.  *Concorde Equity II, LLC v. Miller,* 732 F. Supp. 2d

11  990, 1000 (N.D. Cal. 2010).  Certain types of contracts are invalid unless memorialized by a

12  written document signed by the party against whom the contract is being enforced, i.e. the statute

13  of frauds.  Cal. Civ. Code § 1624.  Mortgages and deeds of trust are subject to the statute of

14  frauds.  *Secrest v. Sec. Natl Mortg. Loan Trust 2002–2,* 167 Cal. App. 4th 544, 552 (2008).  "An

15  agreement to modify a contract that is subject to the statute of frauds is also subject to the statute

16  of frauds" and so must be in writing.  *Id.* at 553; Cal. Civ. Code § 1698(a) ("A contract in writing

17  may be modified by a contract in writing"); *see also Basham v. Pac. Funding Group*, No. 2:10–

18  cv–96 WBS GGH, 2010 WL 2902368 (E.D. Cal. July 22, 2010) (dismissing a claim that

19  defendant breached an oral contract to provide plaintiffs with a loan modification because, under

20  the statute of frauds, "absent a writing, there can be no contract, much less a breach of contract").

21       Based on the factual allegations stated *supra*, Plaintiffs allege generally that "Defendants

22  breached the said agreements by failing to honor the said promises which would have resulted in

23  [] permanent modification of the plaintiff's loan terms."  (ECF No. 26 ¶ 111.)  Two specific

24  agreements highlighted by Plaintiffs are: (1) that BOA had an obligation to Plaintiffs to ensure

25  that Wells and SPS honored the loan modification discussed with BOA in November 2011; and

26  (2) BOA refused to accept Plaintiffs' $1,700 payment in September 2011, after BOA had

27  accepted the partial payment for 14 consecutive months.  (ECF No. 33 at 11; ECF No. 26 ¶ 33.)

28  The Court will address each of these specific agreements.

1

### i.   _November 2011 Loan Modification_

2          BOA contends that Plaintiffs fail to identify any enforceable contract that modified the

3   terms of their Note and DOT.  (ECF No. 28 at 9.)  Plaintiffs allege that "[BOA] granted [them] a

4   modification of their loan terms" at the convention in November 2011, and "[t]his written

5   modification required monthly payments of just over $2,000 per month," (ECF No. 26 ¶ 36.)

6   Plaintiffs allege that "[a]fter signing the [BOA] modification documents for the $2,000 per month

7   rate the [BOA] agent directs Plaintiffs to the KYHC table to fill out the paperwork to obtain the

8   $100,000 Principal Reduction Program (PRP).  []  The KHYC representative confirmed to

9   Plaintiff that [BOA] was a participant in the program and all they had to do was submit the forms

10  online which plaintiffs did immediately."  (ECF No. 26 ¶¶ 39–40.)

11         However, with their Opposition, Plaintiffs have also filed a copy of a Trial Payment Plan

12  ("TPP") and BOA approval letter as evidence of an agreed-upon modification.  (ECF No. 33-1.)

13  The TPP states that BOA approved Plaintiffs for a trial modification on their loan, in the amount

14  of $2,090.41.  (ECF No. 33-1 at 2.)  The TPP approval letter states: "You will receive a

15  permanent modification of your account if you have a) paid each of the [three] monthly trial

16  period payments . . . on time, and b) signed and returned the final Modification Agreement, which

17  will be sent to you once you have completed your Trial Payments."  (ECF No. 33-1 at 3.)  BOA

18  opposes consideration of the TPP, because Plaintiffs' FAC does not mention any use of a TPP.

19  (ECF No. 36 at 14.)  The TPP is not signed by Plaintiffs and Plaintiffs do not appear to state they

20  made the three consecutive TPP trial payments.  (_See_ ECF No. 33 at 11–12.)

21         It is not clear which written contract(s) from November 2011, Plaintiffs are talking about

22  in the FAC, and in any event Plaintiffs seek leave to amend to incorporate allegations regarding

23  the TPP.  Because the FAC as currently pled is not clear as to which contract(s) from November

24  2011 form the basis for their third cause of action, BOA's motion to dismiss is granted with leave

25  to amend as to these allegations.

26

### ii.   _BOA Refusing Plaintiffs' Payment in September 2011_

27         Plaintiffs also allege that BOA's act of refusing to accept the $1,700 payment in

28  September 2011 constitutes a breach of contract since BOA accepted the $1,700 payment for the

previous 14 months, despite that it fell short of the monthly amount owed.  (ECF No. 26 ¶ 33.)

Plaintiffs contend BOA's acceptance of the $1,700 payment constituted a permanent modification

to the Note and DOT.  (ECF No. 26 ¶ 33.)  BOA argues that the governing Note and DOT

expressly allows BOA to accept partial payments and maintain its right to seek a remedy in the

future.  (ECF No. 28 at 10.)

> The terms of the DOT state:
>
> Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted . . . Lender's acceptance of payments . . . in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

(ECF No. 31-1 at 5.)  Therefore, by accepting a partial payment of $1,700, and then refusing a

payment 14 months later, BOA acted within its rights under the Note and DOT.  Plaintiffs,

however, fail to address this in their arguments.  Consequently, Plaintiffs' allegations do not

establish a claim for breach of contract.  Plaintiffs are granted leave to amend, since this is the

first time this Court has ruled on this issue.

For the foregoing reasons, BOA's Motion to Dismiss Plaintiffs' Third Cause of

Action is GRANTED WITH LEAVE TO AMEND.

### 3. *Negligence (Fourth Cause of Action)*

The elements of a negligence cause of action are: (1) the existence of a duty to exercise

due care; (2) breach of that duty; (3) causation; and (4) damages.  *See Merrill v. Navegar, Inc.*, 26

Cal. 4th 465, 500 (2001).  Plaintiffs allege that BOA owed them a duty to exercise reasonable

care when working with them on modifying their home loan.  BOA argues that it did not owe

Plaintiffs a duty of care in considering their loan modification and that Plaintiffs failed to allege

that BOA proximately injured them.  (ECF No. 28 at 14.)

### i. *Duty of Care*

20

1
2
3
4
5
6
7
8
9

The question of whether a duty of care exists is a question of law to be determined on a case-by-case basis. *Lueras v. BAC Home Loans Servicing, LP*, 221 Cal. App. 4th 49, 62, (2013). In California, the general rule is that "a financial institution owes no duty of care to a borrower when the institution[]s involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991). Still, "*Nymark* does not support the sweeping conclusion that a lender never owes a duty of care to a borrower." *Alvarez v. BAC Home Loans Servicing*, L.P., 228 Cal. App. 4th 941, 945 (2014).

10
11
12
13
14

To determine whether a duty of care exists, courts balance the *Biakanja* factors:

> [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

15
16
17
18
19
20

*See Nymark*, 231 Cal. App. 3d at 1098 (citing *Biakanja v. Irving*, 49 Cal. 2d 647 (1958)). In *Meixner v. Wells Fargo Bank, N.A.*, this Court followed the reasoning in *Alvarez*, and held that under the six factors set forth in *Biakanja v. Irving*, a lender owes a duty of care to the borrower when considering his loan modification. 101 F. Supp. 3d 938, 955 (E.D. Cal. 2015); *Alvarez*, 228 Cal. App. 4th at 946; *Biakanja*, 49 Cal. 2d at 649–50.

21
22
23
24
25
26
27
28

The first factor, the extent the transaction could affect the plaintiff, is met, because the failure to uphold the alleged loan modification agreement in November 2011 affected the Plaintiffs ability to pay the long term loan. (ECF No. 26 ¶ 79.) The second factor, the foreseeability of harm, is also met because through mishandling the loan application documents and not notifying the subsequent servicer of the status of the loan, BOA could foresee Plaintiffs losing their alleged loan modification and consequently becoming unable to pay the loan in the long term. (ECF No. 33 at 15; *see* ECF No. 26 ¶ 43.) Relative to the third factor, Plaintiffs'

injury, as previously mentioned herein, Plaintiffs allege an accrual of penalties, fees, and arrears. (ECF No. 26 ¶ 119.)

The fourth factor, the closeness of the connection between the defendant's conduct and the injury suffered, also weighs in favor of finding a duty.  BOA's acts as Plaintiffs allege relative to the causes of action in claims one and two herein are closely tied to Plaintiffs' injury, i.e., having incurred increased fees, penalties, arrears, and an inability to modify their loan.

Relative to the fifth factor, the moral blame of defendant's conduct, it is not clear at this point the extent to which moral blame should be applied to BOA's conduct, so the Court declines to speculate and issues no finding relative to this factor.  Finally, the sixth factor, the policy of preventing future harm, weighs in favor of finding a duty of care for the reasons stated in *Alvarez*, 228 Cal. App. 4th at 950.[6]  After carefully balancing the six *Biakanja* factors, the Court finds that BOA owed Plaintiffs a duty of care in considering Plaintiffs' loan modification application.

As to the remaining elements of a negligence claim, Plaintiffs adequately allege that BOA breached its duty by failing to consider Plaintiffs loan modification reasonably, and that the breach proximately and directly caused Plaintiffs to accrue penalties, fees, and arrears.  (ECF No. 26 ¶¶ 118–119.)  Accordingly, the Court finds that Plaintiffs have stated a sufficient negligence claim, and BOA's Motion to Dismiss the Fourth Cause of Action is DENIED.

### 4.   IIED (Fifth Cause of Action)

Under California law, the elements of the tort of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering

---

[6] The Court notes that the Consumer Financial Protection Bureau (CFPB) has published a policy guidance concerning transferring servicers of residential mortgage loans and the risks it imposes on borrowers.  Mortg. Servicing Transfers Compl. Bull. (CFPB) No. 2014-01, at 3 (August 19, 2014).  The guidance states that transferring servicers should design and implement procedures for transferring pending loan modification documents to transferee servicers to avoid risk and interruption to consumers' pending loan modification.  *Id.*

severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991). The act of foreclosure, absent other circumstances, is not the kind of extreme conduct that supports an intentional infliction of emotional distress claim. *See Quinteros v. Aurora Loan Services*, 740 F. Supp. 2d 1163, 1172 (E.D. Cal. 2010).

Plaintiffs allege that BOA, through its acts and omissions, "engaged in extreme and outrageous conduct with the intent to cause, or with reckless disregard of the probability of causing, Plaintiffs emotional distress." (ECF No. 26 ¶ 121.) Specifically, BOA acted with reckless disregard when it "misrepresented that the loan had to be in default in order to be modified," that Plaintiffs qualified for the KYHC principal reduction, and that their loan would reduce to $1,700 monthly payments. (ECF No. 26 ¶ 121.) However, these allegations do not go beyond what is "generally accepted in the debt collection and/or foreclosure process, which is inherently stressful for debtors." (ECF No. 26 ¶ 121); *Ramirez v. Barclays Capital Mortg.*, No. CV F–10–1039 LJO SKO, 2010 WL 2605696, at *10–11 (E.D. Cal. June 28, 2010); *Shoop v. Deutsche Bank Nat. Trust Co.*, No. CV F 10–1049, 2010 WL 2605708, at *10 (E.D. Cal. June 28, 2010); *Minichino v. Wells Fargo Bank, N.A.*, No. C 11–01030, 2011 WL 4715153, at *7 (N.D. Cal. Oct. 7, 2011). Therefore, the Court GRANTS BOA's Motion to Dismiss Plaintiffs Fifth Cause of Action WITH LEAVE TO AMEND.

     *5.   Violations of Business and Professions Code § 17200 et al. (Sixth Cause of Action)*

The California Business and Professions Code prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. To state a cause of action based on an "unlawful" business act or practice, a plaintiff must allege facts sufficient to show a violation of some underlying law. *People v. McKale*, 25 Cal. 3d

626, 635 (1979).  A claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of unfair competition."  Cal. Bus. & Prof. Code § 17204.

BOA contends that the sufficiency of Plaintiffs' UCL claim depends on Plaintiffs' additional claims in the FAC, and as such, fails because Plaintiffs fail to "allege a single statutory violation or any underlying claim upon which their UCL claim can stand."  (ECF No. 28 at 16.) Here, as detailed above, this Court has found Plaintiff successfully pleaded violations of law for intentional and negligent misrepresentation and general negligence.  *See Mullins v. Wells Fargo Bank, N.A.*, No. 2:13–cv–0453 JAM KJN PS, 2013 WL 5299181, at *11 (E.D. Cal. 2013) (reasoning that a UCL claim survived a motion to dismiss because it was "expressly predicated" on successfully pleading violations of the California Home Owners Bill of Rights.)  Thus, Plaintiffs adequately support a claim under the "unlawful" prong of section 17200.

Next, BOA argues that Plaintiffs lack standing under section 17204, because they failed to demonstrate that they lost "any amount of money, or any specific property, as a result of [BOA's] actions."  (ECF No. 28 at 17.)  "[D]amage to credit" is a "loss of money or property" within the meaning of the UCL.  *Rex v. Chase Home Finance LLC*, 905 F. Supp. 2d 1111, 1147 (C.D. Cal. 2012) (citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010)).  "Where the alleged harm is economic injury, injury in fact and loss of money are one in the same." *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1348 (2009) (cited by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 325 (2011)).  Plaintiffs allege their injuries include late fees, damage to their credit score, and the loss of participations in KYHC's principal reduction program, which is the type of loss protected under the UCL.  Accordingly, these alleged monetary injuries constitute economic injury.

For the stated reasons, BOA's Motion to Dismiss as to Plaintiffs Sixth Cause of Action is DENIED.

### B. **Wells and SPS' Motion to Dismiss**

#### a. **Statute of Limitations**

Wells and SPS contend that Plaintiffs' intentional and negligent misrepresentation claims are barred by the applicable statute of limitations.  (ECF No. 30 at 14.)  The parties do not dispute what statute of limitations applies to these claims (an intentional misrepresentation claim is subject to a three-year statute of limitations, while a negligent misrepresentation claim is subject to a two-year statute of limitations) however, they do dispute the accrual date of each claim.

Wells and SPS argue that the accrual date occurred in December 2011, and therefore Plaintiffs' April 28, 2015, filing date fell after the statute of limitations.  (ECF No. 30 at 15.)  As set forth *supra*, Plaintiffs contend that they did not become aware of their claims until May 2014, when KYHC definitively denied Plaintiffs the $84,000 principal reduction after SPS did not provide KYHC with the requisite documents.  Consequently, the Court finds that Plaintiffs filed their misrepresentation claims timely under the discovery rule.  *Fox*, 35 Cal. 4th at 808.

Therefore, the Court DENIES Wells and SPS' Motion to Dismiss Plaintiffs' First and Second causes of actions as time barred.

#### b. **Fair Notice under Rule 8**

Wells and SPS argue that the FAC fails to give them proper notice under Rule 8 because "the Amended Complaint improperly lumps three defendants together without specifying how each named defendant is liable for each cause of action."  (ECF No. 30 at 4.)  Rule 8 requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).  When a plaintiff sues multiple defendants, the complaint "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the

25

claim to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988). Here, while Plaintiffs refer to all three defendants collectively under each cause of action, the FAC adequately sets out specific facts against each individual defendant. *See Friedman v. Zimmer*, No. CV 15–502 GHK, 2015 WL 6164787 (C.D. Cal. 2015) (lumping defendants together only violates rule 8 when "the pleadings are largely incomprehensible"). Plaintiffs' six causes of action fairly put Wells and SPS on notice of the basis of Plaintiffs' claims: Wells and SPS' involvement in the ultimate denial of the loan modification through the KYHC program.

The Court notes that Plaintiffs allege that SPS "is liable for the breach of agreement by [BOA] to modify the loan to $1,700 monthly payments because they were assigned and assumed the servicing and ownership of the loan and thus assumed the prior liabilities." (ECF No. 26 ¶ 46.) Wells and SPS argue that Plaintiffs fail to plead successor liability. (ECF No. 30 at 5.) While it is unclear from Plaintiffs' FAC whether they are pleading successor liability, Plaintiffs do allege that Wells and SPS are liable based on facts separate from those alleged against BOA. The independent allegations Plaintiffs state against Wells and SPS include: (1) Shrowder telling Plaintiffs that they did not need to make payments to SPS until they resolved the previous modification efforts with BOA, and Shrowder having "acknowledged receiving the [BOA] written confirmation of the modification" (ECF No. 26 ¶¶ 43, 47); (2) SPS misleading Plaintiffs into believing it approved them for a modification when SPS did not have the requisite documentation (ECF No. 26 ¶ 73); (3) Shrowder promising Plaintiffs that by accepting the $16,000 payment from KYHC and making monthly payments of $1,952.56, they would have their loan modified down to a $1,700 monthly amount (ECF No. 26 ¶ 73); and (4) SPS delaying in providing the requisite information to KYHC after SPS became a participant in the principal reduction program (ECF No. 26 ¶ 67). While the Court does not find that Plaintiffs allege

26

1   liability on the part of Wells or SPS solely through a successor in interest theory, the Court does

2   find that Plaintiff has alleged other facts to support their liability.

3       Accordingly, Wells and SPS' Motion to Dismiss Plaintiffs FAC pursuant to Rule 8 is

4   DENIED.

5

6               **c.  Sufficiency of the Allegations in the First Amended Complaint**

7       Wells and SPS seek to dismiss all six of Plaintiffs' causes of action for failure to state a

8   Claim.

9               *1.      Intentional and Negligent Misrepresentation (First and Second Causes of*

10              *Action)*

11      As an initial matter, Plaintiffs allege that Wells is responsible for all of SPS' activity

12  because SPS is an agent of "Wells through its relationship with SPS."  (ECF Nos. 34 at 9–10.)

13  Wells and SPS argue that "there are no allegations in the entire FAC regarding any sort of agency

14  relationship between SPS and Wells Fargo Trustee" and that because Plaintiffs did not allege any

15  misrepresentations by Wells, the misrepresentation claims against Wells should be dismissed.

16  (ECF No. 35 at 6.)

17       Under California law, an agent is defined as "one who represents another, called the

18  principal, in dealings with third persons."  Cal. Civ. Code § 2295.  A principal-agent relationship

19  exists if an agent holds the power to alter the legal relations between the principal and third

20  persons, if an agent is a fiduciary, or if the principal has a right to control the day-to-day conduct

21  of the agent.  *Wallis v. Centennial Ins. Co., Inc.*, 927 F. Supp. 2d 909, 916 (E.D. Cal. 2013).  "If,

22  however, the principal has no control over the day-to-day operations and only has [the] right to

23  dictate the end result of the agent's activities, then an 'independent contractor' relationship

24  exists."  *In re Coupon Clearing Service*, 113 F.3d 1091, 1099–00 (9th Cir. 1997).  Plaintiffs'

25  conclusory statement that Wells is liable for the actions and inactions of SPS under an agency

26  theory is insufficient to show that Wells and SPS are in an agency relationship.  (ECF No. 34 at

27  9–10.)  Plaintiffs' allegation that "Wells and its agent SPS, have concealed the truth as it pertains

28  to Plaintiffs' loan modification efforts" is also insufficient to establish an agency theory.  (ECF

1    No. 34 at 9); *see Buick v. World Savings Bank*, 637 F. Supp. 2d 765, 774–75 (E.D. Cal. 2008)

2    (general allegations were not sufficient to support the contention that a broker was an agent of the

3    lending institution); *but see Griley v. National City Mortg.*, No. CIV. 2:10–1204, 2011 WL

4    219574, at *5 (E.D. Cal. 2011) (claim that a lender and servicer were a principal and agent was

5    valid since plaintiffs alleged the lender hired the servicer).  Plaintiffs do not allege that Wells

6    hired SPS, that Wells had any control over the daily activity of SPS, or that SPS had the authority

7    to alter the legal relations between Wells and Plaintiffs.  Consequently, the FAC does not contain

8    sufficient factual allegations to support an agency-principle relationship between Wells and SPS,

9    and as such, Wells is not responsible for the alleged misrepresentations by SPS.  Therefore, the

10   Court GRANTS Wells and SPS' Motion to Dismiss relative to Defendant Wells WITH LEAVE

11   TO AMEND, as to the First and Second Causes of Action.[7]

12        Wells and SPS also argue that Plaintiffs have failed to allege each element of a fraudulent

13   misrepresentation claim.  (ECF Nos. 30 at 7–10.)  The elements of a fraudulent misrepresentation

14   claim are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to induce reliance; (4)

15   justifiable reliance; and (5) resulting damages.  "The elements of negligent misrepresentation are

16   similar to intentional fraud except for the requirement of scienter; in a claim for negligent

17   misrepresentation, the plaintiff need not allege the defendant made an intentionally false

18   statement, but simply one as to which he or she lacked any reasonable ground for believing the

19   statement to be true." *Charnay*, 145 Cal. App. 4th at 184; *see also id.* (citing *Alliance Mortgage*

20   *Co.,* 10 Cal. 4th at 1239 n. 4 (stating that negligent misrepresentation is a species of the tort of

21   deceit and like fraud, requires a misrepresentation, justifiable reliance and damage).

22                                      *i.  Misrepresentation*

23        Plaintiffs allege that upon their loan's transfer to SPS, Shrowder told Plaintiffs to stop

24   making payments until "the prior modification efforts that Plaintiff and [BOA] had been working

25   on were resolved," which was a misrepresentation that resulted in SPS charging Plaintiffs

26   unnecessary fees, arrears, and costs.  (ECF No. 26 ¶ 73(xvi).)  Additionally, SPS continually told

27

28   [7] In their motion to dismiss, Wells and SPS challenge the sufficiency of allegations against Wells specifically relative to the first and second causes of action, but not the other causes of action.  (ECF No. 30 at 16.)

1   Plaintiffs that their loan was under review for modification, but "documents which had been

2   submitted had not been received," although the FAC does not specify which documents. (ECF

3   No. 26 ¶ 73.)  Further, "Shrowder promised plaintiffs that if they complied with these demands,

4   which included making $1,952.56 monthly payments and allowing SPS to receive the $16,000

5   from the KYHC reinstatement program, they would have their loan modified down to the $1,700

6   monthly amount." (ECF No. 26 ¶ 55.)  Shrowder stated that Plaintiffs had to make monthly

7   payments of $1,952.56, until SPS became a member of the KYHC principal reduction program;

8   however, even after SPS did become a member, it did not submit the requisite documentation to

9   KYHC and Plaintiffs' loan was never modified down to a $1,700 monthly payment. (ECF No. 26

10  ¶ 67.)  Thus, Plaintiffs allege that this ongoing promise to modify constitutes intentional

11  misrepresentation.  The Court will also construe said allegations to constitute a claim that SPS

12  lacked a reasonable ground for making the aforementioned assertions regarding a loan

13  modification. *Charnay*, 145 Cal. App. 4th at 184; *see infra*, discussion regarding the fourth cause

14  of action (negligence).  Thus, these allegations are sufficient to meet the misrepresentation

15  element for an intentional/negligent misrepresentation claim at this pleading stage.

16                          *ii.  Knowledge of Falsity*

17          Regarding an intentional misrepresentation, Plaintiffs allege: "[SPS] never had any

18  intention of reviewing Plaintiffs' many applications for loan modification in good faith or of

19  granting them a modification." (ECF No. 26 ¶ 75.)  Plaintiffs allege "[SPS] intended that

20  Plaintiffs rely on their said false representations and promises in order to make more money

21  servicing a distressed loan" through fees, arrears, and penalties. (ECF No. 26 ¶ 78.)  Plaintiffs

22  allege: "Specifically defendants utilized the loan modification process and the promise of

23  securing a loan modification as a means of putting Plaintiffs further into default while collecting

24  higher and higher servicing fee[s] [while] knowing that simply denying a loan modification from

25  the outset made it more likely that Plaintiffs could cure their default, whereas stringing Plaintiffs

26  along for years would increase the likelihood that the arrearages would accumulate beyond

27  Plaintiffs' ability to cure it." (ECF No. 26 ¶ 29.)  Regarding a negligent misrepresentation (one

28  which SPS lacked any reasonable ground for believing to be true), Plaintiffs allege: "defendants

1    were unconcerned with the truth of the statements made regarding Plaintiffs' qualification for a

2    loan modification and only made them to further its intended goal of never granting Plaintiffs a

3    fair review for a loan modification." (ECF No. 26 ¶ 100.) Specifically, Plaintiffs allege Shrowder

4    and other representatives from SPS made several statements regarding Plaintiff's ability to obtain

5    a loan.  For example: "Shrowder did tell plaintiff the owner of the loan was a participant in an

6    aspect of the KYHC program known as the loan reinstatement program whereby only the past due

7    payments are covered by KYHC and not yet the KYHC program whereby $100,000 is given to

8    the lender to reduce the principal." (ECF No. 26 ¶ 47.)  Regarding a HAMP loan: "For three

9    months [] in 2012 plaintiff made numerous calls to SPS to inquire as to the status of the $1,700

10   modification agreement, as well as both the KYHC and the HAMP application.  Plaintiffs were

11   told repeatedly everything was still pending to submit certain financial records that they had

12   already submitted or to send in updatd bank documents." (ECF No. 26 ¶ 51.)  "Shrowder further

13   told plaintiff the goal was to make the loan current and then she would go to the investor and ask

14   for an "in house["] modification because the plaintiffs will have now complied with everything

15   they were told to do." (ECF No. 26 ¶ 54.)  "Shrowder promised plaintiffs that if they complied

16   with these demands, which included making $1,952.56 monthly payments and allowing SPS to

17   receive the $16,000 from the KYHC reinstatement program, they would have their loan modified

18   down to the $1,700 monthly amount.  This modification would take place independent of the

19   ongoing [HAMP] or entry by SPS into the [KYHC] principal reduction program, either of which

20   would also accomplish the same result." (ECF No. 26 ¶ 55.)

21        Based on these allegations, Plaintiffs have adequately pleaded that SPS intentionally

22   strung Plaintiffs along in the process of obtaining a loan in order to collect increased fees, while

23   knowing such efforts were futile, or alternatively represented that Plaintiffs would receive

24   different types of loan modifications without a reasonable basis for believing these

25   representations.  It is not disputed that some of the promises allegedly made by SPS (such as a

26   reduction down to $1,700 per month and receipt by Plaintiffs of the full $100,000 KYHC

27   principle reduction amount) were not carried out by SPS.  Therefore, Plaintiffs have satisfied the

28   "knowledge of falsity" element.

1

           *iii.   Intent to Defraud*

2

        Plaintiffs allege "[SPS] acted with the purpose of delaying the modification process and

3

stringing Plaintiffs along for the purpose of increasing arrears, fees, and costs, all of which would

4

be recovered by SPS upon the actual foreclosure sale of the property which would occur as a

5

result of the failure to provide Plaintiffs the permanent modification." (ECF No. 26 ¶ 72(ix).)

6

Plaintiffs allege that it is more profitable for SPS to keep Plaintiffs in a loan modification process

7

for as long as possible before deciding to foreclose, and consequently SPS never intended to

8

modify Plaintiffs monthly payment to $1,700. (ECF No. 26 ¶ 132.) Therefore, Plaintiffs have

9

satisfied this third element.

10

           *iv.   Justifiable Reliance*

11

        Plaintiffs allege that their reliance on SPS' representations was justified, because SPS was

12

in a position to grant a HAMP loan modification (ECF No. 26 ¶ 112), an in house loan

13

modification (ECF No. 26 ¶ 61), and the KYHC principal reduction (ECF No. 26 ¶ 63) and "had

14

expressed its willingness to grant such modification" (ECF No. 26 ¶ 82). Plaintiffs allege "the

15

reliance was specifically justified because Plaintiffs were presumably granted a modification . . .

16

and defendants accepted payments." (ECF No. 26 ¶ 82.)

17

        Wells and SPS argue that throughout the modification review, Plaintiffs remained

18

obligated to pay the full monthly payment and under the DOT, SPS was within its rights to accept

19

lesser payments without waiving any rights. (ECF No. 30 at 17.) However, Plaintiffs allege they

20

spent time and money in complying with SPS' requests so as to obtain a $1,700 modified loan

21

payment. (ECF No. 26 ¶ 90.) Plaintiffs also allege that although Plaintiffs had an obligation to

22

pay monthly payments under the Note and DOT, they believe that because of SPS' statements to

23

not make a loan payment in January 2012 until SPS resolved the pending loan modification

24

agreement from BOA and to make $1700 payments in February 2013 for six months, Plaintiffs

25

fell into default. (ECF No. 26 ¶ 84.) Thus, Plaintiffs have sufficiently pled the fifth element of

26

fraudulent misrepresentation.

27

//

28

 //

31

1

*v.* <u>Resulting Damages</u>

2      Plaintiffs allege that because of SPS' delay in the modification process, "Plaintiffs

3 incurred penalties, fees and costs . . . as well as negative credit reporting." (ECF No. 26 ¶ 85.)

4 Therefore, Plaintiffs have sufficiently met this element under the standard expressed under Rule

5 9(b).

6      Based on the foregoing, the Motion to Dismiss Plaintiff's First and Second Causes of

7 Action, as to Defendant SPS, is DENIED.

8           2.           *Breach of Contract (Third Cause of Action)*

9      Under California law, to state a claim for breach of contract, the plaintiff must plead: (1)

10 existence of the contract; (2) plaintiff's performance or excuse for nonperformance of the

11 contract; (3) defendant's breach of the contract; and (4) resulting damages. *Armstrong Petrol.*

12 *Corp. v. Tri Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1391 n.6 (2004). Mortgages, deeds

13 of trust, and agreements to modify these contracts are subject to the statute of frauds. *Clark v.*

14 *Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1044 (E.D. Cal. 2010).

15      Specific to this cause of action, Plaintiffs recite several allegations regarding apparently

16 verbal promises made by Shrowder, an agent of SPS. For instance: "SPS, through its

17 representative Shrowder, informed plaintiff that SPS would receive and accept the $16,000

18 claimed past due payments"; "Shrowder further told plaintiffs that the goal was to make the loan

19 current and then SPS would go to the investor and ask for an ['in-house' modification";

20 "Shrowder promised plaintiffs … they would have their loan modified down to the $1,700

21 monthly amount". (ECF No. 26 ¶¶ 112, 113.) Plaintiffs appear to acknowledge that these

22 promises were verbal. (ECF No. 26 ¶ 114.) In their Opposition, Plaintiffs also reference for the

23 first time the TPP, which may or may not be relevant to allegations that Wells or SPS breached a

24 contract. As it stands, Plaintiffs do not clarify which contract(s) they are referring to in this cause

25 of action, or show how the statute of frauds does not invalidate their claims regarding the verbal

26 promises Shrowder allegedly made.

27      Therefore, Wells' and SPS' Motion to Dismiss Plaintiffs' Third Cause of Action is

28 GRANTED WITH LEAVE TO AMEND.

1

### 3.  Negligence (Fourth Cause of Action)

2      To find a claim for negligence, the court must find: (1) the defendant owed the plaintiff a

3   legal duty, (2) the defendant breached that duty, and (3) the breach was a proximate or legal cause

4   of the plaintiff's injuries.  *Gilmer v. Ellington*, 159 Cal. App. 4th 190, 195 (2008).  The absence of

5   any one of these three elements is fatal to a negligence claim.  *Id.*

6      The Court infers Plaintiffs allege negligence against Wells and SPS for acts including:

7   failing to honor November 2011 loan modification agreed upon with BOA (ECF No. 26 ¶¶ 73,

8   96); failing to submit loan modification documents to KYHC in order to secure the remaining

9   $84,000 reduction and simultaneously reduce their monthly payments to $1,700 per month (ECF

10  No. 26 ¶ 67); and generally, continuously acting in such a way so to lead Plaintiffs to believe they

11  would receive some type of permanent modification, but refraining from actually taking the steps

12  to carry out a modification.

13      Wells and SPS contend that they owe no duty of care to Plaintiffs as a lender.  (ECF No.

14  30 at 22.)  Wells and SPS disagree that lenders/servicers owe a duty of care in handling a loan

15  modification application, and even if so, the six-factor test in *Nymark* does not support finding

16  such a duty in this case.  Were a duty to be established, there was no breach.  (ECF No. 30 at 22–

17  26.)   Additionally, Wells and SPS argue that Plaintiffs did not suffer damages as a result of any

18  negligence by Wells and SPS.  (ECF No. 35 at 12–13.)

19      First, as this Court has found, a loan modification falls outside of a conventional money-

20  lending role, because when a lender/servicer and a borrower are already in an established

21  relationship, as Plaintiffs, SPS, and Wells are in this case, a borrower cannot decide not to choose

22  a different lender or servicer.[8]  *See Meixner*, 101 F. Supp. 3d at 954; *see also Alvarez*, 228 Cal.

23  App. 4th at 948 (finding that a lender/servicer has no general duty to offer a modification, but a

24  special relationship does arise when a lender/servicer agrees to consider a borrower's loan

25  modification application).  Therefore, when SPS allegedly promised Plaintiffs to modify their

26  loan, it took on a duty to handle the modification process with reasonable care.  (ECF No. 26 ¶

27

28
---
[8] Plaintiffs and Wells / SPS were not in an established relationship in that BOA transferred ownership/servicing of the loan to Wells/SPS.  However, no party suggests that Plaintiffs could have chosen to prevent that transfer.

55); *Alvarez*, 228 Cal. App. 4th at 949.  Second, as this Court held in *Meixner*, a duty of care can apply to a residential loan.  *Meixner*, 101 F. Supp. 3d at 954–55.

Finally, the *Biakanja* factors weigh in favor of finding that Wells and SPS owed Plaintiffs a duty of care when considering their loan modification applications.   The *Biakanja* balancing factors are:

> (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.

*Nymark*, 231 Cal. App. 3d at 1098.

Wells and SPS' efforts to assist Plaintiffs modify their loan were intended to affect Plaintiff, because a payment modification to $1,700, or some other modification, may have allowed Plaintiffs to avoid defaulting.  (ECF No. 26 ¶¶ 55, 81.)  The harm caused to Plaintiffs as a result of Wells and SPS not recognizing the alleged transferred loan modification in November 2011, not producing documents requested by KYHC, or not carrying out alleged promises to modify a loan is reasonably foreseeable.  For example, it is a foreseeable conclusion that Plaintiffs' reliance on Defendants' promises to modify would cause Plaintiffs not to pursue other options that may have minimized their financial injury, such as declaring bankruptcy or selling the property.  (ECF No. 34 at 16.)  Plaintiffs' alleged injury appears to overlap with their injury caused by BOA; Plaintiffs allege Wells and SPS unreasonably handled the pending loan modification in November 2011, unreasonably delayed in future efforts to modify the loan, and consequently caused Plaintiffs to fall into an incurable default.  (ECF No. 26 ¶ 84.)  There is a close connection between the alleged conduct and the injury suffered.  For example, Plaintiffs allege that through SPS' failure to submit requisite paperwork to KYHC, Plaintiffs were unable to obtain a principal reduction of $84,000.  (ECF No. 26 ¶ 67.)  Relative to the fifth factor, the moral blame of a defendant's conduct, it is not clear at this stage the extent to which moral blame should be applied to Wells and SPS' conduct.   Finally, finding that Wells and SPS have a duty to handle Plaintiffs' loan with care supports the policy of preventing future harm.  *Jolley*, 213 Cal. App. 4th at 903 ("[T]he California Legislature has expressed a strong preference for fostering more

1    cooperative relations between lenders and borrowers who are at risk of foreclosure, so that homes

2    will not be lost.")  In considering all of the *Biakanja* factors, the Court finds that Wells and SPS

3    owed Plaintiffs a duty of care in considering Plaintiffs' loan modification.

4           Regarding a breach of the duty, the foregoing allegations adequately state that Wells and

5    SPS did not handle Plaintiffs' requests and/or application for a loan modification with care.

6           Wells and SPS also argue that Plaintiffs have failed to allege damages, because the

7    penalties, costs, and arrears Plaintiffs accumulated were the result of their own inability to make

8    mortgage payments, not their alleged negligence.  (ECF No. 35 at 12–13.)  However, Plaintiffs

9    allege that SPS' handling of their loan modification attempts caused them additional arrears and

10   late fees beyond the anticipated time of when they should have received an answer on their loan

11   modification.  (ECF No. 26 ¶¶ 79, 119.)  This delay caused Plaintiffs to forego other options, such

12   as selling their home and saving the equity they had accrued throughout their ownership of the

13   property.  (ECF No. 26 ¶ 119.)

14          Plaintiffs have adequately set forth allegations to support each element of negligence in

15   the FAC.  Therefore, the Court DENIES Wells and SPS' Motion to Dismiss Plaintiffs Fourth

16   Cause of Action.[9]

17                        *4.   IIED (Fifth Cause of Action)*

18          Under California law, a creditor's conduct in attempting to collect a debt is outrageous, as

19   required to support a claim for IIED, only if it exceeds all reasonable bounds of decency.  *Flores*

20   *v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1124 (E.D. Cal. 2014).  Plaintiffs allege that Wells

21   and SPS' acts of failing to honor the November 2011 modification with BOA (ECF No. 26 ¶ 44),

22   failing to submit requisite paperwork to KYHC to obtain the principal reduction (ECF No. 26 ¶

23   67), and the ongoing delay in modifying Plaintiffs' monthly loan payment after promising to do

24   so were extreme and outrageous.  (ECF No. 26 ¶ 121.)  The FAC alleges that this conduct caused

25   Plaintiffs emotional distress, because "Defendants were aware that Plaintiff strongly wished to

26

27   ───────────────
     [9] The alleged offense conduct in the FAC is directed at SPS.  However, Defendants specifically move for dismissal of
     Wells relative to the first and second causes of action (intentional and negligent misrepresentation), and not the other
28   causes of action.

                                        35

1   retain the Subject Property, that Mr. Dougherty was disabled and that Mrs. Dougherty was

2   seeking assistance by having an affordable payment that she could sustain long term."  (ECF No.

3   26 ¶ 121.)  Though arguably offensive, this conduct is not so offensive as to "exceed all bounds

4   of that usually tolerated in a civilized community."  *Flores,* 997 F. Supp. 2d at 1124 (quoting

5   *Cervantez v. J.C. Penney Co.*, 24 Cal. 3d 579, 593 (1979)); *see also Davenport v. Litton Loan*

6   *Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (the lender's act of foreclosure, alleged

7   certified mail failure, and refusal to modify plaintiff's loan were not outrageous acts to justify an

8   IIED claim).

9          Accordingly, Wells and SPS' Motion to Dismiss Plaintiffs Fifth Cause of Action is

10  GRANTED WITH LEAVE TO AMEND.

11              *5.   Violation of Bus. & Prof. Code § 17200 et seq. (Sixth Cause of Action)*

12         "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or fraudulent

13  business act or practice, or (2) unfair, deceptive, untrue or misleading advertising."  *Lippitt v.*

14  *Raymond James Financial Services, Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003); Cal. Bus. & Prof.

15  Code § 17200.  "[A]n action based on [the UCL] to redress an unlawful business practice

16  'borrows' violations of other laws and treats these violations . . . as unlawful practices,

17  independently actionable under section 17200 et seq. and subject to the distinct remedies

18  provided thereunder."  *Farmers Ins. Exchange v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  The

19  unlawful prong of a plaintiff's § 17200 claim can be satisfied by either state or federal law.

20  *Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001).

21  As discussed *supra*, Plaintiffs have standing to bring a claim under the unlawful prong of section

22  17200 based on their misrepresentation and negligence claims.  Plaintiffs have alleged damages

23  in the form of increased service charges, fees, and/or penalties and damage to their credit.

24  Therefore, Wells and SPS' Motion to Dismiss Plaintiffs Sixth Cause of Action is DENIED.

25         **V.   CONCLUSION**

26         For the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART

27  Defendants' separate Motions to Dismiss (ECF Nos. 28, 30) Plaintiffs' First Amended

28  Complaint.  The Court orders the following:

36

1.   Defendant BOA's Motion to Dismiss is DENIED with respect to COUNT I, COUNT II, COUNT IV, and COUNT VI; and GRANTED WITH LEAVE TO AMEND with respect to COUNT III and COUNT V.

2.   Defendant Wells and SPS' Motion to Dismiss is ruled upon as follows.  With respect to COUNT I and COUNT II against Wells, the motion is GRANTED WITH LEAVE TO AMEND.  With respect to COUNT I and II against SPS, the motion is DENIED.  With respect to COUNTS IV and VI against Wells and SPS, the motion is DENIED.  With respect to COUNTS III and V against Wells and SPS, the motion is GRANTED WITH LEAVE TO AMEND.

IT IS SO ORDERED.


Dated: April 1, 2016

Troy L. Nunley
United States District Judge