UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENNY DOUGHERTY, and DENNIS DOUGHERTY,<br><br>                Plaintiffs,<br><br>    v.<br><br>BANK OF AMERICA, N.A., WELLS FARGO BANK, N.A., as trustee on behalf of the holders of the Harborview Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-12, SELECT PORTFOLIO SERVICING, INC., DOES 1 TO 50, inclusive,<br><br>                Defendant. | No. 2:15-cv-01226-TLN-DB<br><br>**ORDER GRANTING PLAINTIFFS'** *EX PARTE* **APPLICATION FOR A TEMPORARY RESTRAINING ORDER** |

       This matter is before the Court on Plaintiffs Penny Dougherty and Dennis Dougherty's ("Plaintiffs") *ex parte* Application for a Temporary Restraining Order. (ECF No. 54.) Plaintiffs seek to enjoin Defendants Select Portfolio Services, Inc., and Wells Fargo Bank, N.A., (jointly "Defendants") from conducting a trustee's sale of real property, located at 5130 Fruitvale Road, Newcastle, California, 95658. Defendants filed an opposition to the application. (ECF No. 56.) Plaintiffs filed a reply. (ECF No. 58.) The Court has carefully considered the arguments raised by both parties. For the reasons detailed below, the Court hereby GRANTS Plaintiffs' *ex parte* application for a temporary restraining order (ECF No. 54).

### I. FACTUAL AND PROCEDURAL BACKGROUND

At all times relevant to this action Plaintiffs have resided at 5130 Fruitvale Road, Newcastle, California 95658.  (Sec. Amend. Compl., ECF No. 41.)  In November 2006, Plaintiffs refinanced an existing loan on the property through Bank of America.  (ECF No. 41 at 3.)  Plaintiffs approached Bank of America in 2010 to obtain a loan modification.  (ECF No. 41 ¶ 25.)  Before receiving a modification and after missing a payment, Plaintiffs began making payments of $1,700 a month instead of their previous $1,850 a month for 14 months without incident.  (ECF No. 41 ¶¶ 26–30.)  Plaintiffs allege that in September of 2011, Bank of America returned Plaintiffs' check for $1,700 and informed Plaintiffs that it would not accept any more payments that were not in the amount of $1,952.56.  (ECF No. 41 ¶ 32.)

Plaintiffs allege that on November 15, 2011, they attended a home loan event at which a Bank of America representative helped them apply for the Keep Your Home California ("KYHC") principal reduction program and a loan modification through the bank.  (ECF No. 41 ¶ 34.)  At this event, Plaintiffs allege that the representative indicated they qualified for a KYHC principle reduction of $100,000 and executed loan modification papers.  (ECF No. 41 ¶ 33.)  Plaintiffs allege the modification papers would ultimately reduce the monthly loan payments to $1,700.  (ECF No. 41 ¶ 37.)

Bank of America sold Plaintiffs' loan to Select Portfolio Servicing, Inc., ("SPS") on November 30, 2011.  (ECF No. 41 ¶ 42.)  Plaintiffs allege that upon opening communication with SPS, their representative Debora Shrowder instructed Plaintiffs to refrain from making mortgage payments and asked for the loan modification papers from the November 15th event.  (ECF No. 41 ¶ 43.)  Plaintiffs allege that they provided Shrowder with the only copy of those documents.  (ECF No. 41 ¶ 43.)  Plaintiffs allege that in January 2012, they spoke again with Ms. Shrowder who informed them that Wells Fargo and SPS were not members of the KYHC principal reduction program, but were members of the loan reinstatement program.  (ECF No. 41 ¶ 46–47.)  Plaintiffs applied for and were later admitted into the KYHC loan reinstatement program through which SPS would receive approximately $16,000 to make Plaintiffs' loan current.  (ECF No. 41 ¶ 52; Decl. of Penny Dougherty, ECF No. 54-2 ¶ 7.)  Defendants provided a Deed of Trust from

1    May 8, 2012, recording the KYHC program loan for $16,089.03 to repay Plaintiff's past-due loan
2    amounts and a Deed of Reconveyance from May 6, 2015, demonstrating the forgiveness of that
3    amount.[1]  (ECF No. 57-1, Ex. C, Ex. G.)
4        Prior to receiving their KYHC loan reinstatement amount, Plaintiffs allege that Ms.
5    Shrowder informed them she would start on an "in house" modification that would move forward
6    simultaneously with Plaintiffs' Home Affordable Modification Program ("HAMP") application.
7    (ECF No. 41 ¶ 54.)  In March 2012, Plaintiffs allege Ms. Shrowder informed Plaintiffs they
8    needed to be current on their monthly payments of $1,952.56.  (ECF No. 41 ¶ 55.)  Plaintiffs
9    allege they made the required payments from April 2012 to November 2012.  (ECF No. 41 ¶ 57.)
10   However, Plaintiffs acknowledge they stopped making payments again in December 2012 and
11   January 2013.  (ECF No. 41 ¶ 59.)  Plaintiffs allege that Ms. Shrowder entered them into a six
12   month forbearance in February 2013 with monthly payments of $1,700.  (ECF No. 41 ¶ 61.)  At
13   that time, Plaintiffs were also advised that Wells Fargo had joined the KYHC principal reduction
14   program.  (ECF No. 41 ¶ 63.)
15       When SPS and Wells Fargo notified Plaintiffs that it formally became a participate in the
16   KYHC principal reduction program, Plaintiffs allege they immediately applied for the program
17   and were informed that they were approved pending SPS documentation.  (ECF No. 41 ¶ 66.)
18   Plaintiffs allege that SPS did not timely or accurately provide KYHC with the required
19   documentation and as a result KYHC denied Plaintiffs' reduction request in May 2014.  (ECF No.
20   41 ¶ 67.)  Defendants add that Plaintiffs allege they rejected a HAMP loan in May 2014 because
21   the payment was above the $1,700 Plaintiffs wanted to pay.  (ECF No. 56 at 4; ECF No. 41 ¶ 68.)
22       Mrs. Dougherty's declaration states that Plaintiffs reapplied for a loan modification and

---

[1] Defendants filed a separate request for judicial notice of ten documents.  (ECF No. 57.)  Defendants request the Court take judicial notice of Deed of Trust No. 2006-0120856-00, Assignment of Deed of Trust No. 2011-0082698-00, Deed of Trust No. 2012-0040796-00, Corporate Assignment of Deed of Trust No. 2015-0027659-00, Substitution of Trustee No. 2015-0029071-00, Deed of Reconveyance No. 2015-0036978-00, Notice of Trustee's Sale No. 2017-0006822, a true and correct copy of the Home Affordable Modification Program ("HAMP") Supplemental Directive 09-01, and a copy of the KYHC websites frequently asked questions.  (ECF No. 57.)  Under Federal Rule of Evidence 201 a court can take judicial notice of a document when the subject "can be accurately and readily determined from the sources whose accuracy cannot reasonably be questioned." For the reasons stated in Defendants' request and noting no opposition by Plaintiffs to the request, the Court GRANTS Defendants' request, and takes judicial notice of the attached exhibits pursuant to Federal Rule of Evidence 201 (ECF No. 57–1 at 1–112).

1    principal reduction through KYHC in August 2015.  (ECF No. 54-2 ¶ 14.)  Plaintiffs refused a

2    HAMP loan at that time because they believed payments were too expensive.  Plaintiffs were also

3    deemed ineligible for KYHC funding because of the instant litigation.  Plaintiffs continued with

4    the instant action, and on January 30, 2017, Defendants recorded a Deed of Trustee's sale.  (ECF

5    No. 57-1, Ex. H.)  The foreclosure sale is scheduled for February 22, 2017.  (ECF No. 57-1, Ex.

6    H.)

7           Plaintiffs filed an *ex parte* application for a Temporary Restraining order on February 1,

8    2017.  (ECF No. 54.)  The Court ordered Defendants to file an opposition within seven days of

9    the motion and Plaintiffs to file a reply within three days of the opposition.  (ECF No. 55.)

10   Subsequently, Defendants filed their opposition on February 7, 2017, and Plaintiffs filed their

11   reply on February 9, 2017.  (ECF Nos. 56 ¶ 58.)

12       **II.**      **STANDARD OF LAW**

13          A temporary restraining order ("TRO") is an extraordinary and temporary "fix" that the

14   court may issue without notice to the adverse party if, in an affidavit or verified complaint, the

15   movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the

16   movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  The

17   purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing.

18   See Fed. R. Civ. P. 65.  It is the practice of this Court to apply the same standard to a motion for

19   temporary restraining order as a motion for preliminary injunction.  Local Rule 231(a); *see also*

20   *Aiello v. One West Bank*, No. 2:10-cv-0227- GEB-EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan.

21   29, 2010) ("Temporary restraining orders are governed by the same standard applicable to

22   preliminary injunctions.") (internal quotation and citations omitted).

23          Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear

24   showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555

25   U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).  "The

26   purpose of a preliminary injunction is merely to preserve the relative positions of the parties until

27   a trial on the merits can be held."  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981)

28   (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal.

1  App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final
2  determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt*
3  *Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to
4  any situation before the filing of a lawsuit, but instead to the last uncontested status which
5  preceded the pending controversy.") (internal quotation marks omitted). In cases where the
6  movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of
7  scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005).
8  Preliminary injunction is not automatically denied simply because the movant seeks to alter the
9  status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc.*
10 *v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

11  "A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed
12 on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
13 [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."
14 *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test
15 to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135
16 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may
17 weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A
18 stronger showing on the balance of the hardships may support issuing a preliminary injunction
19 even where the plaintiff shows that there are "serious questions on the merits . . . so long as the
20 plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the
21 public interest." *Id.* Simply put, Plaintiff must demonstrate, "that [if] serious questions going to
22 the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor,"
23 in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

24  **III.   ANALYSIS**

25  Plaintiffs seek a TRO under the serious questions variation of the *Winter* test. "Under the
26 'serious questions' variation of the test, a preliminary injunction is proper if there are serious
27 questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the
28 balance of hardships tips sharply in favor of plaintiff; and the injunction is in the public interest."

*Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011)).  So long as serious questions going to the merits exist, the balancing of the hardship tips sharply in favor of plaintiff, and if plaintiff makes a showing on the other two prongs of the *Winter* test, a preliminary injunction may issue.  *Id.*  The Court turns to a discussion of these four factors.

### A. Likelihood of success on the merits

Plaintiffs argue that their affidavit and briefs raise a serious question as to whether Defendants have breached an enforceable and binding loan modification entered into on November 15, 2011, between Plaintiffs and Bank of America. (ECF No. 54 at 7.) Plaintiffs further question whether or not Plaintiffs would have fallen behind on their loan payments if SPS had honored the agreement when they took over the loan. (ECF No. 54 at 7.) Defendants fail to address these two questions in their opposition, but instead focus on later offers of modifications to demonstrate Plaintiffs are unlikely to succeed on the merits. (*See* ECF No. 56 at 6–8.) Defendants also argue that Plaintiffs' evidence in support of their motion is insufficient to meet the standard necessary to show a likelihood of success on the merits. (ECF No. 56 at 6.)

To maintain a cause of action for breach of contract under California Law, a plaintiff must demonstrate: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to plaintiff. *Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1000 (N.D. Cal. 2010). Plaintiffs proffer the declaration of Penny Dougherty in support of their motion. Mrs. Dougherty states that at the home loan event on November 15, 2011, she and her husband "completed an application for a loan modification and provided documents relating to [their] income." (ECF No. 54–2 ¶ 3.) Mrs. Dougherty further declares that at the convention she "worked with a Bank of America representative to complete and sign a pink sheet that [she] believed was a permanent modification agreement for which [she] was approved." (ECF No. 54–2 ¶ 4.) As alleged in the complaint, Plaintiffs provided their only copy of the pink sheet to Defendants' representative Ms. Shrowder. (ECF No. 41 ¶ 43.) Defendants do not respond to the statements regarding a possible contract arising from the November 15th event. Based on the Plaintiff's declaration, the Court finds that

6

1    Plaintiffs have at least raised serious questions as to the merits of their breach of contract claim.

2       As to the first element, existence of a contract, Plaintiff Penny Dougherty states that they
3    signed loan modification papers at the event which detailed the terms of the contract. (ECF No.
4    54–2 ¶ 3.) Defendants do not contest her statement with facts with regards to a contract arising
5    from the November 15 event. (*See* ECF No. 56 at 6 n.2, "Defendants dispute each of Plaintiffs'
6    claims set forth in the SAC and the facts alleged in the declaration of Penny Dougherty.  In the
7    event this court grants the instant TRO and issues an order to show cause as to why a preliminary
8    injunction should not issue, Defendants will provide the Court with evidence refuting Plaintiffs'
9    claims in connection with their opposition.")  Therefore, Plaintiffs demonstrated at least a serious
10   question as to the existence of a contract.  As to the second element, Plaintiffs' performance or
11   nonperformance, Plaintiffs allege, and support with Plaintiff's declaration, that Plaintiffs made
12   payments in the amount of $1,952.56 from April 2012 to November 2012. (ECF No. 54–2 ¶ 8.)
13   Defendants do not dispute this contention, but merely state that Plaintiffs have refused other
14   modification offers, which entirely misses the point.  Thus, Plaintiffs have demonstrated at least a
15   serious question as to their performance on the contract and in accordance with Defendants'
16   requests.

17      As to Defendants' breach, Plaintiffs' entire lawsuit is based on Defendants' failure to
18   lower the loan payments to the $1,700 Plaintiffs alleged was promised at the November 15th
19   event. Defendants again offer nothing in explanation as to why they are not in breach of the
20   alleged contract from November 15, 2011.  The complaint sets out sufficient facts, which the
21   Court does not accept as true.  However, the Court is persuaded by the affidavits and briefs that
22   serious questions exist, as to whether Defendants breached the contract if one was formed on
23   November 15th.  With regards to damages, Plaintiffs allege that they have incurred excess arrears
24   as a result of the breach of contract.  Plaintiffs assert that there is a serious question as to whether
25   those arrears would have occurred had Defendants not breached the contract formed on
26   November 15, 2011. (ECF No. 54 at 7.) Defendants suggest that Plaintiffs could have accepted
27   other offers of HAMP in order to reduce what they owe. (ECF No. 56 at 7.) However,
28   Defendants argument misses the point. If Plaintiffs had a binding contract with Bank of America,

then Plaintiffs are not required to acquiesce to Defendants every request in order to perform under the terms of the November 15 contract. Therefore, Defendants have failed to meet their burden of presenting evidence disputing the existence of the contract and there is at least a serious question whether damages arose from Defendants breach.

Defendants fail to seriously engage with the series of events as described in Plaintiff's declaration and Plaintiff's explanations — given under penalty of perjury — raise serious questions as to whether a written modification occurred and whether Defendants breached that modification by failing to place Plaintiffs on the lower monthly payments. Defendants offer no evidence to the contrary and largely fail to address the question of the existence of a contract stemming from the November 15th event. For the foregoing reasons, the Court finds that there are at least serious questions going to the merits of Plaintiffs' breach of contract claim. Thus, this element favors Plaintiffs.

### B. Irreparable Harm

"Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22). Plaintiffs are asking for injunctive relief to stop the foreclosure of their home. Plaintiffs contend that if SPS and Wells Fargo are permitted to foreclose on the property Plaintiffs will lose their entire ownership and possessory interest in the property. (ECF No. 54 at 9.) Defendants assert that Plaintiffs have not demonstrated a likelihood of success on the merits and therefore the loss of property enough is not sufficient to obtain a TRO. (ECF No. 56 at 8.) As this Court has found herein that Plaintiffs have demonstrated at least serious questions going to the merits, this argument is unavailing.

Defendants again miss the point of Plaintiffs' arguments. Plaintiffs have raised serious questions that Defendants breached the modification which lead to the default that forms the basis of Defendants argument. Defendants use Plaintiff's default to argue that Plaintiffs have no legal or equitable right to the property. (ECF No. 56 at 8.) Defendants cite *Voorhies v. Greene*, 139 Cal. App. 3d 989, 995–98 (1983), for the proposition that courts cannot grant a TRO to "preserve the status quo" when no equitable relief exists. In *Voorhies*, the appellate court reversed an order

granting a preliminary injunction because the party was seeking to regain possession of real property and personal property allegedly inside the building. The court reasoned that there was an adequate remedy at law to allow plaintiff to recover without forcing the occupants of the property to allow the plaintiff back onto the property. *Id.* at 997. Those facts are inapposite to the instant action. In *Voorhies*, the plaintiff no longer had possession or use of the property and sought a court order permitting him back onto the property until the litigation was settled. Here, Plaintiffs have maintained possession and use of the property throughout the litigation. Plaintiffs are not attempting to return to the property, but to maintain possession and use of the property until the completion of this litigation. Furthermore, Defendants do not offer any support for their contention the Plaintiffs have no legal or equitable right to the property. Accordingly, Defendants' second argument is likewise availing.

Other courts agree that real property is considered unique and "[i]n the case of a wrongful foreclosure and sale, money compensation would not provide an adequate remedy to plaintiff." *Friedman v. Wells Fargo Bank N.A.*, CV 14-00123 BRO (PLAx), 2014 WL 12572928, at *2 (C.D. Cal. Jan. 23, 2014); see also Cal. Civ. Code § 3387 ("It is presumed that the breach of an agreement to transfer real property cannot be adequately relieved by pecuniary compensation."). Based on the uniqueness of real property, the Court finds that Plaintiffs would be irreparably harmed in the absence of a TRO. Thus, this factor weighs in favor of enjoining Defendants from foreclosing on the property.

### C. Balance of Equities

"The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank Nat. Ass'n*, No. CV F 13–1121 LJO MJS, 2013 WL 3864214, at *18 (E.D.Cal. July 23, 2013) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). A court balancing the equities will look to possible harm that could befall either party. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) *aff'd*, 348 Fed. Appx. 288 (9th Cir. 2009). Where the court finds serious questions going to the merits, the balance of equities must tip sharply in favor

of Plaintiffs. *Lopez*, 680 F.3d at 1072. Plaintiffs would suffer a permanent deprivation of their home if Defendants are permitted to foreclose on the residence. Whereas Defendants identify their harm as "lose income flow, incur[ed] costs, and risk of depreciation of the Property." The Court is not swayed by Defendants' argument that Plaintiffs' failure to make loan payments in three years and Defendants continuing to hold a likely depreciating security interest are sufficient hardships to outweigh the potential loss of a home. Looking at the harm to both parties, causing a slight delay of the Defendant's sale of the property is greatly outweighed by Plaintiffs' potential loss of their home if the foreclosure is wrongful. Therefore, this factor weighs in favor of Plaintiffs.

### D. Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)). "The public interest analysis for the issuance of a preliminary injunction requires [the Court] to consider whether there exists some critical public interest that would be injured by the grant of preliminary relief." *Indep. Living Ctr., So. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (2009) (internal quotation marks and citations omitted), *vacated and remanded on other grounds*, — U.S. —, 132 S.Ct. 1204 (2012). The public interest prong primarily addresses the impact of an injunction on non-parties. *Bernhardt v. Los Angeles Cnty.*, 339 F. 3d 920, 931–32 (9th Cir. 2003). Other courts have recognized that foreclosures adversely impact households and communities and there is "a strong public interest in preventing unlawful foreclosures." *Sharma v. Provident Funding Assocs., LP*, No. 09-5968 VRW, 2010 WL 143473, at *2 (N.D. Cal. Jan. 8, 2010). The Court finds this rule particularly true where Defendants are alleged to have breached a written agreement.

Plaintiffs assert that the property is located in a rural and closely knit community, which would be more greatly impacted by a foreclosure sale. Defendants do not address the public interest element except to say in passing that "[t]o allow the plaintiffs to abuse this judicial mechanism both prejudices Defendants . . . and is not in the public interest." However, this statement is not enough and Defendants have not provided the Court with any reason that a

foreclosure on the property is in the public interest.  The Court agrees that foreclosures adversely impact households and communities and therefore, finds that this element weighs in Plaintiffs' favor.

### E. Payment of Bond

The Court waives the discretionary bond requirement set forth in Federal Rule of Civil Procedure 65(c).  *See Governing Council of Pinoleville Indian Community v. Mendocino Cnty.*, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988) (citing *People of California v. Tahoe Regional Planning Agency*, 766 F. 2d 1319, 1325–26 (9th Cir. 1985)) ("[C]ourts have discretion to excuse the bond requirement....").  First, the Court finds that Defendants are adequately protected by the security interest in Plaintiffs' property.  *See Jorgensen v. Cassiday*, 320 F. 3d 906, 919 (9th Cir. 2003) ("The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."); *see also Ticketmaster L.L.C. v. RMG Technologies, Inc.*, 507 F. Supp. 2d 1096, 1116 (C.D. Cal. 2007) ("A bond may not be required, or may be minimal, when the harm to the enjoined party is slight or where the movant has demonstrated a likelihood of success.").  Second, the Court finds that, given Plaintiffs' current financial situation, they would be unable to pay the bond, and thus would be precluded from judicial review.  *See Mendocino Cnty.*, 684 F. Supp. at 1047 (holding that it is appropriate to waive the bond requirement where "requiring the security would deny access to judicial review.).  Finally, "as a result of the parties' ongoing financial relationships, the bond requirement is also properly waived since defendants are capable of recouping any costs or damages resulting from the wrongful issuance of the injunction." *California Hosp. Ass'n v. Maxwell-Jolly*, 776 F. Supp. 2d 1129 (E.D. Cal. 2011) (citing *United States v. Bedford Assocs.*, 618 F. 2d 904, 916–17 (2nd Cir. 1980)).  Accordingly, the Court waives the bond requirement.

### IV. CONCLUSION

For the above stated reasons, the Court hereby issues a Temporary Restraining Order that shall prohibit Defendants Select Portfolio Servicing, Inc., Wells Fargo Bank, N.A., and all of its agents from conducting a Trustee's Sale of the Property located at 5130 Fruitvale Road, Newcastle, California 95658.  The Temporary Restraining Order shall remain in place until the

Court rules on Plaintiffs' motion for preliminary injunction. Plaintiffs' shall file and appropriately notice their motion within fourteen (14) days of this order.

      IT IS SO ORDERED.

Dated: February 17, 2017

                                  Troy L. Nunley
                                  United States District Judge