UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENNY DOUGHERTY, and DENNIS DOUGHERTY,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A., WELLS FARGO BANK, N.A., as trustee on behalf of the Harborview Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-12, SELECT PORTFOLIO SERVICING, INC., DOES 1 TO 50, inclusive,<br><br>Defendants. | No. 2:15-cv-01226-TLN-DB<br><br>**ORDER** |

This matter is before the Court on Plaintiffs Penny Dougherty and Dennis Dougherty's ("Plaintiffs") Motion for Preliminary Injunction. (ECF No. 65.) Plaintiffs seek to enjoin Defendants Select Portfolio Services, Inc., and Wells Fargo Bank, N.A., (jointly "Defendants") from conducting a trustee's sale of real property, located at 5130 Fruitvale Road, Newcastle, California, 95658. Defendants oppose the motion. (ECF No. 66.) Plaintiffs filed a reply. (ECF No. 70.) Having carefully considered the arguments raised by both parties and for the reasons set forth below, the Court hereby GRANTS Plaintiffs' Motion for Preliminary Injunction (ECF No. 65).

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

At all times relevant to this action Plaintiffs have resided at 5130 Fruitvale Road, Newcastle, California 95658. (Sec. Amend. Compl., ECF No. 41.) In November 2006, Plaintiffs refinanced an existing loan on the property through Bank of America. (ECF No. 41 at 3.) Plaintiffs approached Bank of America in 2010 to obtain a loan modification. (ECF No. 41 ¶ 25.) Before receiving a modification and after missing a payment, Plaintiffs began making payments of $1,700 a month instead of their previous $1,850 a month for 14 months without incident. (ECF No. 41 ¶¶ 26–30.) Plaintiffs allege that in September of 2011, Bank of America returned Plaintiffs' check for $1,700 and informed Plaintiffs that it would not accept any more payments that were not in the amount of $1,952.56. (ECF No. 41 ¶ 32.)

Plaintiffs allege that on November 15, 2011, they attended a home loan event at which a Bank of America representative helped them apply for the Keep Your Home California ("KYHC") principal reduction program and a loan modification through the bank. (ECF No. 41 ¶ 34.) At this event, Plaintiffs allege that the representative indicated they qualified for a KYHC principle reduction of $100,000 and executed loan modification papers. (ECF No. 41 ¶ 33.) Plaintiffs allege the modification papers would ultimately reduce the monthly loan payments to $1,700. (ECF No. 41 ¶ 37.)

Bank of America sold Plaintiffs' loan to Select Portfolio Servicing, Inc., ("SPS") on November 30, 2011. (ECF No. 41 ¶ 42.) Plaintiffs allege that upon opening communication with SPS, their representative Debora Shrowder instructed Plaintiffs to refrain from making mortgage payments and asked for the loan modification papers from the November 15th event. (ECF No. 41 ¶ 43.) Plaintiffs allege that they provided Shrowder with the only copy of those documents. (ECF No. 41 ¶ 43.) Plaintiffs allege that in January 2012, they spoke again with Ms. Shrowder who informed them that Wells Fargo and SPS were not members of the KYHC principal reduction program, but were members of the loan reinstatement program. (ECF No. 41 ¶¶ 46–47.) Plaintiffs applied for and were later admitted into the KYHC loan reinstatement program

---

[1] The fact section is taken from the Court's previous Order granting Plaintiffs' Motion for Temporary Restraining Order (ECF No. 59).

through which SPS would receive approximately $16,000 to make Plaintiffs' loan current. (ECF No. 41 ¶ 52; Decl. of Penny Dougherty, ECF No. 54-2 ¶ 7.) Defendants provided a Deed of Trust from May 8, 2012, recording the KYHC program loan for $16,089.03 to repay Plaintiff's past-due loan amounts and a Deed of Reconveyance from May 6, 2015, demonstrating the forgiveness of that amount. (ECF No. 57-1, Ex. C, Ex. G.)

Prior to receiving their KYHC loan reinstatement amount, Plaintiffs allege that Ms. Shrowder informed them she would start on an "in house" modification that would move forward simultaneously with Plaintiffs' Home Affordable Modification Program ("HAMP") application. (ECF No. 41 ¶ 54.) In March 2012, Plaintiffs allege Ms. Shrowder informed Plaintiffs they needed to be current on their monthly payments of $1,952.56. (ECF No. 41 ¶ 55.) Plaintiffs allege they made the required payments from April 2012 to November 2012. (ECF No. 41 ¶ 57.) However, Plaintiffs acknowledge they stopped making payments again in December 2012 and January 2013. (ECF No. 41 ¶ 59.) Plaintiffs allege that Ms. Shrowder entered them into a six-month forbearance in February 2013 with monthly payments of $1,700. (ECF No. 41 ¶ 61.) At that time, Plaintiffs were also advised that Wells Fargo had joined the KYHC principal reduction program. (ECF No. 41 ¶ 63.)

When SPS and Wells Fargo notified Plaintiffs that it formally became a participant in the KYHC principal reduction program, Plaintiffs allege they immediately applied for the program and were informed that they were approved pending SPS documentation. (ECF No. 41 ¶ 66.) Plaintiffs allege that SPS did not timely or accurately provide KYHC with the required documentation and as a result KYHC denied Plaintiffs' reduction request in May 2014. (ECF No. 41 ¶ 67.) Plaintiffs allege they rejected a HAMP loan in May 2014 because the payment was above the $1,700 Plaintiffs wanted to pay. (ECF No. 41 ¶ 68.)

Mrs. Dougherty's declaration states that Plaintiffs reapplied for a loan modification and principal reduction through KYHC in August 2015. (ECF No. 54-2 ¶ 14.) Plaintiffs refused a HAMP loan at that time because they believed payments were too expensive. Plaintiffs were also deemed ineligible for KYHC funding because of the instant litigation.[2] Plaintiffs continued with

---

[2] Plaintiffs filed the instant action on June 8, 2015. (ECF No. 1.)

3

the instant action, and on January 30, 2017, Defendants recorded a Deed of Trustee's sale. (ECF No. 57-1, Ex. H.) A foreclosure sale was scheduled for February 22, 2017. (ECF No. 57-1, Ex. H.)

Plaintiffs filed an *ex parte* application for a Temporary Restraining order on February 1, 2017. (ECF No. 54.) The Court ordered Defendants to file an opposition within seven days of the motion and Plaintiffs to file a reply within three days of the opposition. (ECF No. 55.) Subsequently, Defendants filed their opposition on February 7, 2017, and Plaintiffs filed their reply on February 9, 2017. (ECF Nos. 56 ¶ 58.) On February 17, 2017, the Court issued an order granting Plaintiffs' application until the Court ruled on a preliminary injunction and ordering Plaintiffs to file a motion for preliminary injunction within fourteen days. (Order, ECF No. 59 at 12.) Plaintiffs filed the instant motion on March 3, 2017. (ECF No. 65.)

**II.    STANDARD OF LAW**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (emphasis added); *see also Costa Mesa City Employee's Assn. v. City of Costa Mesa*, 209 Cal. App. 4th 298, 305 (2012) ("The purpose of such an order is to preserve the status quo until a final determination following a trial.") (internal quotation marks omitted); *GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000) ("The status quo ante litem refers not simply to any situation before the filing of a lawsuit, but instead to the last uncontested status which preceded the pending controversy.") (internal quotation marks omitted). In cases where the movant seeks to alter the status quo, preliminary injunction is disfavored and a higher level of scrutiny must apply. *Schrier v. University of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). Preliminary injunction is not automatically denied simply because the movant seeks to alter the status quo, but instead the movant must meet heightened scrutiny. *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 33–34 (2d Cir. 1995).

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. A plaintiff must "make a showing on all four prongs" of the *Winter* test to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In evaluating a plaintiff's motion for preliminary injunction, a district court may weigh the plaintiff's showings on the *Winter* elements using a sliding-scale approach. *Id.* A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the plaintiff shows that there are "serious questions on the merits . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* Simply put, the plaintiff must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply in the plaintiff's favor," in order to succeed in a request for preliminary injunction. *Id.* at 1134–35 (emphasis added).

### III. ANALYSIS

Plaintiffs seek a preliminary injunction under the serious questions variation of the *Winter* test. "Under the 'serious questions' variation of the test, a preliminary injunction is proper if there are serious questions going to the merits; there is a likelihood of irreparable injury to the plaintiff; the balance of hardships tips sharply in favor of plaintiff; and the injunction is in the public interest." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (citing *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–32 (9th Cir. 2011)). So long as serious questions going to the merits exist, the balancing of the hardship tips sharply in favor of plaintiff, and if plaintiff makes a showing on the other two prongs of the *Winter* test, a preliminary injunction may issue. *Id.* The Court turns to a discussion of these four factors.

#### A. Serious Questions Going to the Merits

Plaintiffs assert that there are five serious questions going to the merits of their claims. Plaintiffs identify the five serious questions as: (1) whether the Doughertys and Bank of America entered into an enforceable modification agreement at the home loan convention in November

2011; (2) whether Plaintiffs would have fallen behind on the loans had SPS honored the agreement; (3) whether SPS misplaced the modification agreement when it assumed servicing the loan; (4) whether Ms. Shrowder made misrepresentations which affected the Doughertys payments; and (5) whether SPS purposefully or intentionally did not send in the appropriate paper work under the KYHC principal reduction program. (ECF No. 65 at 7–9.) In the Order granting a Temporary Restraining Order, the Court found that there were at least serious questions going to the merits of Plaintiffs' breach of contract claim. (Order, ECF No. 59 at 8.)

To maintain a cause of action for breach of contract under California Law, a plaintiff must demonstrate: (1) the existence of a contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to plaintiff. *Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1000 (N.D. Cal. 2010). Plaintiffs proffer the declaration of Penny Dougherty in support of their motion. Mrs. Dougherty states that at the home loan event on November 15, 2011, she and her husband "completed an application for a loan modification and provided documents relating to [their] income." (ECF No. 54–2 ¶ 3.) Mrs. Dougherty further declares that at the convention she "worked with a Bank of America representative to complete and sign a pink sheet that [she] believed was a permanent modification agreement for which [she] was approved." (ECF No. 54–2 ¶ 4.) As alleged in the complaint, Plaintiffs provided their only copy of the pink sheet to Defendants' representative Ms. Shrowder. (ECF No. 41 ¶ 43.)

Defendants now present the Court with evidence they claimed to possess in their opposition to the temporary restraining order, but did not submit. Defendants argue there is no evidence that Plaintiffs entered into a contract with Bank of America at the convention in November 2011. (ECF No. 66 at 8.) Defendants assert Plaintiffs never entered into a permanent modification with monthly mortgage payments of $1,700, but instead entered into a trial period plan ("TPP") with monthly trial payments of $2,090.41. (ECF No. 66 at 12.) Defendants proffer the declaration of Sherry Benight, the Document Control Officer at SPS, in support of their argument. (ECF No. 68.) Plaintiffs object to Benight's declaration insofar as it discusses Plaintiffs' verbal interactions with Bank of America at the convention. (ECF No. 71.)

"In a preliminary injunction proceeding, the district court is accorded broad discretion in ruling on the admissibility of evidence." *Sega Enterprise Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1530 n.10 (9th Cir. 1992). "The trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984). Plaintiffs assert that Benight's statements regarding Plaintiffs' meeting with Bank of America at the convention should be given less weight because she lacks personal knowledge of the interaction. (ECF No. 71 at 2–3.) Plaintiffs argue that the interaction was in person and Benight fails to provide a "basis to assume that these in-person interactions were recorded within Bank of America's business records." (ECF No. 71 at 2.) In essence, Defendants seek to demonstrate through the absence of written record that Bank of America did not form a contract with Plaintiffs for a mortgage rate of $1,700 a month. However, Plaintiffs are correct that Benight does not provide any background or support for her statements. Benight does not explain the foundation upon which she bases her statements or give the Court any reason to find that an absence of records means that such promises did not occur. Furthermore, if Defendants have documentation supporting Benight's statements, they fail to present it. Accordingly, the Court gives the statements little weight in determining whether or not there are serious questions going to Plaintiffs' breach of contract claim.

As to the first element for breach of contract — the existence of a contract — the Court previously relied on Mrs. Dougherty's declaration and Defendants lack of evidence when determining that a serious question existed as to whether a contract was formed. (ECF No. 59 at 7.) Plaintiff's declaration similarly demonstrates a serious question as to a contract being formed at the November 2011 convention. As discussed above, Defendants proffered evidence lacks foundation to demonstrate a contract did not exist. Furthermore, Plaintiffs allege SPS misplaced the loan modification papers from the November 2011 convention. Plaintiffs allege they entered into a verbal loan modification with a pink slip detailing the terms at the convention, provided SPS with their only copy of the pink slip, and SPS subsequently lost the documents. Nothing in Benight's declaration contradicts this possibility. Consequently, Benight's thorough review of

the records would make the question even more serious. Benight's statements support Plaintiffs' contention that there are serious questions as to whether the document was lost. Defendants have not presented the Court with evidence to definitely dispel the Court's questions regarding the existence of a contract. Accordingly, there are at least serious questions going to the existence of a contract.

Defendants fail to present new evidence or arguments regarding elements two, three and four of the breach of contract claim. Accordingly, serious questions remain and this factor weighs in favor of granting a preliminary injunction.

### B. Irreparable Injury

"Preliminary injunctive relief is available only if plaintiffs 'demonstrate that irreparable injury is likely in the absence of an injunction.'" *Johnson v. Couturier*, 572 F.3d 1067, 1081 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 22). Plaintiffs are asking for injunctive relief to stop the foreclosure of their home. Plaintiffs contend that if SPS and Wells Fargo are permitted to foreclose on the property Plaintiffs will lose their entire ownership and possessory interest in the property. (ECF No. 65 at 9.) Defendants argue a loss of property is the outcome of every foreclosure and therefore Plaintiffs need to allege more than loss of property to demonstrate irreparable injury. (ECF No. 66 at 18.) Defendants contend that courts cannot issue a preliminary injunction to preserve the status quo where there is no cognizable right to relief. (ECF No. 66 at 19.) Defendants argue, here, the risk of foreclosure was present before the controversy began. (ECF No. 66 at 19.)

Plaintiffs have raised serious questions that Defendants breached the modification which lead Plaintiffs to default on their loan. Defendants use Plaintiffs' default to argue that Plaintiffs have no legal or equitable right to the property and thus the Court would not be preserving the status quo by enjoining Defendants from conducting a trustee's sale. (ECF No. 66 at 19.) Defendants again cite *Voorhies v. Greene*, 139 Cal. App. 2d 989, 995–98 (1983), in support of this proposition. The Court conducted a thorough analysis of *Voorhies* in its previous order. Defendants have not presented any new arguments that persuade the Court to view *Voorhies* in a different light. Furthermore, the Court's Standard of Law, *supra* section II, very clearly denotes

that the status quo is not simply the situation before filing of a lawsuit, but the last uncontested status which preceded the pending controversy. *See GoTo.com, Inc. v. Walt Disney, Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000). The last uncontested status preceding this litigation would have been when Plaintiffs were making regular mortgage payments and foreclosure was not looming.

As was disucssed in the TRO, real property is considered unique and the resulting loss of the property would irreparably harm Plaintiffs if the Court does not enjoin Defendants. Accordingly, this factor weighs in favor of Plaintiffs.

### C. Balancing of Equities

"The purpose of preliminary injunctive relief is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined." *Heflebower v. U.S. Bank Nat. Ass'n*, No. CV F 13–1121 LJO MJS, 2013 WL 3864214, at *18 (E.D. Cal. July 23, 2013) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). A court balancing the equities will look to possible harm that could befall either party. *See CytoSport, Inc. v. Vital Pharm., Inc.*, 617 F. Supp. 2d 1051, 1081 (E.D. Cal. 2009) *aff'd*, 348 Fed. Appx. 288 (9th Cir. 2009). Where the court finds serious questions going to the merits, the balance of equities must tip sharply in favor of Plaintiffs. *Lopez*, 680 F.3d at 1072.

Plaintiffs will suffer a permanent deprivation of their home and livelihood as ranchers if an injunction does not issue. (ECF No. 65 at 3.) In contrast, Defendants identify their harm as approximately twelve thousand dollars in taxes and mortgage insurance resulting from Plaintiffs' default and a past due balance of $92,655.42. (ECF No. 66 at 19.) Various district courts in the Ninth Circuit have determined the balance of equities tips sharply in the plaintiff's favor when a plaintiff seeks to enjoin the defendant from carrying out a foreclosure sale. *See Castellanos v. Countrywide Bank NA*, No. 15-CV-00896-BLF, 2015 WL 914436, at *2 (N.D. Cal. Feb. 27, 2015) (finding balance of equities to tip sharply in favor of temporary restraining order in light of possible foreclosure proceedings); *Velaquez v. Chase Home Fin. LLC.*, No. CIV S-12-0433, 2012 WL 671965, at *8 (E.D. Cal. Mar. 16, 2012) (finding balance of equities to tip sharply in favor of preliminary injunction due to certain ejection from home). Looking to the harm suffered by both

parties, the Court finds Plaintiffs' failure to make loan payments and Defendants' depreciating security interest insufficient hardships to outweigh Plaintiffs' potential loss of a home. *See Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899 EMC, 2011 WL 2654093, at *2 (N.D. Cal. July 6, 2011) (finding a mortgage lender's monetary loss over three years insufficient to overcome the homeowner's hardship of imminent foreclosure). Moreover, Defendants' monetary losses will be mitigated by the bond required by the Court. For these reasons, the Court finds that the balance of equities tips sharply in Plaintiffs' favor.

### D. Public Interest

The Court found in its previous order, "foreclosures adversely impact households and communities." (ECF No. 59 at 11.) Furthermore, as was the case in their opposition to the application for Temporary Restraining Order, Defendants do not address the public interest element except to say that an injunction "is not in the public interest." (ECF No. 66 at 20.) For the same reasons the Court stated in its Order Granting a Temporary Restraining Order, the Court finds that this element weighs in favor of Plaintiffs.

### E. Bond Payment

"The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ." Fed. R. Civ. P. 65(c). Courts have discretion to excuse the bond requirement. *Governing Council of Pinoleville Indian Community v. Mendocino Cnty.*, 684 F. Supp. 1042, 1047 (N.D. Cal. 1988). Here, Defendants argue their costs and damages are "$12,232.19 in taxes and mortgage insurance for the Loan," and seek a "bond in the amount of the current arrearages . . . of $92,655.42." (ECF No. 66 at 19, 21.) Plaintiffs argue that they should not be required to post bond because Defendants have failed to show they are entitled to any amount of the arrearages as they are not the lender. (ECF No. 70 at 7.) As the Court noted in its previous order, Defendants are protected by their security interest in Plaintiffs' property. (ECF No. 59 at 11.) To the extent that Defendants seek a bond in the amount of the outstanding arrearages, the amount could reasonably be recouped through a trustee's sale if Defendants succeed in the case.

10

Taking into account the circumstances including, but not limited to, the fact that over the past three years Plaintiffs have lived on the property without making any payments to Defendants and the unknown length of the litigation, the Court concludes that a bond is appropriate. This litigation has been pending for two years and has not yet left the pleading stage. The Court and the parties cannot reasonably anticipate how much longer the pending litigation will continue. The Court feels that justice is best served by requiring a bond with monthly payments to the Court of $1,700.00 — the amount Plaintiffs allege was promised to be their new monthly mortgage payment. In the event that Defendants are wrongfully enjoined the bond will cover a portion of the arrearages. In contrast, Plaintiffs will be paying the mortgage payment they allege was promised to them.

**IV.　CONCLUSION**

For the foregoing reasons, the Court hereby GRANTS Plaintiffs' Motion for Preliminary Injunction (ECF No. 65).

1. Defendants are ENJOINED from conducting a trustee's sale or foreclosure of the property located at 5130 Fruitvale Road, Newcastle, California, 95658, until the resolution of this action or further order of the Court.
2. Plaintiffs are ORDERED to deposit on the first business day of each month, the sum of $1,700.00 with the Clerk of Court to be held in bond until the resolution of this action or further order of the Court.

IT IS SO ORDERED.

Dated: June 1, 2017

Troy L. Nunley
United States District Judge