UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PENNY DOUGHERTY and DENNIS DOUGHERTY,

Plaintiffs,

v.

BANK OF AMERICA, N.A.; WELLS FARGO BANK, N.A., as trustee, on behalf of the holders of the Harborview Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-12; SELECT PORTFOLIO SERVICING, INC.,

Defendants.

No. 2:15-cv-01226-TLN-DB

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' THIRD AND FIFTH CLAIMS WITH LEAVE TO AMEND**

This matter is before the Court pursuant to Defendant Wells Fargo Bank, N.A. ("Wells"), as trustee on behalf of the Holders of the HarborView Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-12, and Defendant Select Portfolio Servicing, Inc.'s ("SPS") (collectively, "Defendants") Motion to Dismiss. (ECF No. 43.) Penny and Dennis Dougherty (collectively, "Plaintiffs") oppose the motion. (ECF No. 47.) Defendants have replied. (ECF No. 49.) For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss with leave to amend.

1

## I. FACTUAL BACKGROUND

Plaintiffs allege Defendants breached agreements to modify Plaintiffs' residential mortgage. Plaintiffs' residence is located at 5130 Fruitvale Road, Newcastle, California 95658 ("Property"). (Pls.' Second Am. Compl., "SAC," ECF No. 41 ¶ 2.)

Plaintiffs allege they obtained a $458,000 "jumbo non-conforming adjustable rate negative amortization" mortgage from Aegis Wholesale Corporation in November 2006.[1] (ECF No. 41 ¶¶ 12, 14.) Plaintiffs allege they were instructed to make their monthly payments first to Countrywide and then to BAC Home Loans Servicing, LP,[2] a subsidiary of defendant Bank of America, N.A. ("BOA"). (ECF No. 41 ¶ 15–16.)

Plaintiffs allege they became concerned their mortgage may adjust to a monthly payment they could not afford, but BOA told Plaintiffs "there was no program available for a modification of their loan terms since they were current in their payments." (ECF No. 41 ¶ 17–18.) Plaintiffs allege they contacted BOA regularly about converting to a fixed rate, but BOA told Plaintiffs "there was…modification…available because [Plaintiffs] were current and not in default." (ECF No. 41 ¶ 19.)

Plaintiffs allege that in July 2010 they did not make their $1,850 monthly payment because it was very difficult for them and they "had been told they would have to become delinquent in order to apply and qualify for reduced payments." (ECF No. 41 ¶ 24.) Plaintiffs allege they contacted BOA to apply for a loan modification and BOA told them there was still no program available for a modification, even if they missed payments, and they must continue making all monthly payments in full. (ECF No. 41 ¶ 25.)

///

---

[1] Defendants request that the Court take judicial notice of documents associated with the Property, which are recorded in the Official Records of the Placer County Recorder's Office. (ECF No. 44 at 2–3.) These documents include the Deed of Trust, Assignment of Deed of Trust, Deed of Trust related to Keep Your Home California ("KYHC"), Corporate Assignment Deed of Trust, Substitution of Trustee, Notice of Default recorded April 30, 2015, indicating Plaintiffs were $33,685.97 in arrears, and a Deed of Reconveyance related to the KYHC program. (ECF No. 44 at 2–3.) Plaintiffs have not opposed the request for judicial notice. The Court will take judicial notice of these documents as they are matters of public record and are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Gardner v. American Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1196 (E.D. Cal. 2010) (citing Fed. R. Evid. 201 (b)).

[2] For clarity, the Court will refer to activity by BAC Home Loans Servicing, LP and defendant BOA as BOA.

Plaintiffs allege they decided to pay BOA $1,700 per month instead of the required $1,850 starting in August 2010 and continuing 14 months because Plaintiffs could only afford the lower amount. (ECF No. 41 ¶¶ 26, 28, 29.) Plaintiffs allege BOA returned Plaintiffs' September 2011 payment of $1,700 and said it would only accept monthly payments of $1,952.56. (ECF No. 41 ¶ 32.) Plaintiffs allege they made monthly payments of $1,952.56 to BOA in October and November 2011 and BOA invited Plaintiffs to attend an event at the Sacramento Convention Center to apply for and discuss a mortgage modification. (ECF No. 41 ¶¶ 33, 34.)

Plaintiffs allege BOA granted Plaintiffs a modification at the Convention Center with new payments of just over $2,000 per month to begin in January 2012. (ECF No. 41 ¶ 35.) Plaintiffs allege the "[BOA] agent filled in a pink form with the information showing what the loan modification terms would consist of which Plaintiffs signed." (ECF No. 41 ¶ 35.) Plaintiffs allege they never received a copy of the pink form. (ECF No. 41 ¶ 35.) Plaintiffs allege the BOA agent told Plaintiffs that BOA would send final documents to them for signature, including a new Deed of Trust. (ECF No. 41 ¶ 35.) Plaintiffs allege they would not have entered into the $2,000 per month written modification but for the promise from BOA that their monthly payment would be reduced to $1,700 per month once BOA received $100,000 from a Keep Your Home California ("KYHC") program, for which Plaintiffs qualified. (ECF No. 41 ¶¶ 35, 37.)

Plaintiffs allege the BOA agent told them the "$100,000 from KYHC was certain because [BOA] was a participant in the KYHC program." (ECF No. 41 ¶ 38.) Plaintiffs allege that after Plaintiffs signed the BOA modification documents for the $2,000 per month rate, "the BOA agent directed [P]laintiffs to the KYHC table to fill out the paperwork to obtain the $100,000 Principal Reduction Program." (ECF No. 41 ¶ 39.) Plaintiffs allege "[t]he KYHC representative confirmed to [P]laintiff[s] that [BOA] was a participant in the program and all [Plaintiffs] had to do was submit the forms online which [P]laintiffs did immediately." (ECF No. 41 ¶ 40.) Plaintiffs allege "[t]he KYHC representative told [P]laintiffs to anticipate funding of the $100,000 to [BOA] within about 6 weeks and the [BOA] representative told [P]laintiffs that their first $1,700 payment would begin in or about January 2012." (ECF No. 41 ¶ 41.)

///

3

Plaintiffs allege BOA sent Plaintiffs a letter dated November 18, 2011, informing Plaintiffs BOA was placing Plaintiffs in a trial modification plan in which Plaintiffs must make three trial payments of $2,094.41 and then Plaintiffs would receive a permanent modification. (ECF No. 41 ¶ 36.) Plaintiffs allege they "never agreed at the Convention Center to enter into trial plan payments, but instead a permanent modification; therefore, Plaintiffs never made the trial payments and never signed the said November 18, 2011 letter." (ECF No. 41 ¶ 36.)

Plaintiffs allege that about "November 30, 2011 while awaiting funding of the KYHC $100,000 payment to [BOA], [BOA] sent a letter to [P]laintiffs [stating] that their loan had been sold to an unknown entity and that Select Portfolio Servicing (SPS) would be the new servicer for that entity. Plaintiffs were not told SPS or the new unknown owner would not honor the KYHC principal reduction money." (ECF No. 41 ¶ 42.) Plaintiffs allege in December 2011 they called SPS, and spoke to SPS' agent Debra Shrowder, because they were concerned they had not received confirmation of the $100,000 from the KYHC program. (ECF No. 41 ¶¶ 43.) Plaintiffs allege Shrowder told Plaintiffs "she would look into the status of the $100,000 from KYHC and also asked [P]laintiff[s] to send her the [BOA] approval papers for the loan modification which [P]laintiff[s] did send to her." (ECF No. 41 ¶ 43.) Plaintiffs allege Shrowder told Plaintiffs to not make any payments to SPS until it resolved the issue. (ECF No. 41 ¶ 43.)

Plaintiffs allege that in January 2012, Shrowder spoke with Plaintiffs again and "acknowledged receiving the [BOA] written confirmation of the modification," but Shrowder said that "SPS was at this time not going to honor it because [SPS] was not yet a participant in the KYHC program but [was] applying to become one." (ECF No. 41 ¶ 44.) Plaintiffs allege they "were told the new servicer and owner were applying to become participants in the principal reduction program of KYHC, which once approved, they would accept the $100,000." (ECF No. 41 ¶ 46.) Plaintiffs allege they waited "to hear from SPS and the new owner about their acceptance into KYHC." (ECF No. 41 ¶ 46.)

Plaintiffs allege Shrowder told them "the owner of the loan was a participant in an aspect of the KYHC program known as the loan reinstatement program whereby only the past due payments are covered by KYHC and not yet the KYHC program whereby $100,000 is given to

4

the lender to reduce the principal." (ECF No. 41 ¶ 47.) Plaintiffs allege Shrowder told them they should submit a Home Affordable Modification Program ("HAMP") application for modification, which they allege they completed and submitted to SPS in January 2012. (ECF No. 41 ¶¶ 48, 50.)

Plaintiffs allege they called SPS repeatedly "to inquire as to the status of the $1,700 modification agreement, as well as both the KYHC and the HAMP application." (ECF No. 41 ¶ 51.) Plaintiffs allege they "were told repeatedly everything was still pending and to submit certain financial records that they had already submitted or to send in updated bank statements." (ECF No. 41 ¶ 51.) Plaintiffs allege Shrowder informed Plaintiffs they were approved for KYHC's loan reinstatement and "SPS would receive and accept the $16,000 claimed past due payments which would make the loan current. Plaintiffs didn't object and consented to SPS and the owner receiving the $16,000." (ECF No. 41 ¶ 52.)

Plaintiffs allege Shrowder told them that "although the loan would become current with the $16,000 payment, [Plaintiffs] had to stay current on and pay $1,952.56 monthly payment beginning April 1, 2012 pending SPS' entry into the KYHC principal reduction program or approval through the HAMP program." (ECF No. 41 ¶ 53.) Plaintiffs allege Shrowder told them "the goal was to make the loan current and then she would go to the investor and ask for an 'in house' modification because [] [P]laintiffs will have now complied with everything they were told to do." (ECF No. 41 ¶ 54.) Plaintiffs allege "Shrowder promised [P]laintiffs that if they complied with these demands, which included making $1,952.56 monthly payments and allowing SPS to receive the $16,000 from the KYHC reinstatement program, they would have their loan modified down to the $1,700 monthly amount." (ECF No. 41 ¶ 55.) Plaintiffs allege this "modification would take place independent of the ongoing HAMP or entry by SPS into the principal reduction program." (ECF No. 41 ¶ 55.)

Plaintiffs allege they made the monthly payments of $1,952.56 every month for eight months while waiting for confirmation of a modification and reduction in their monthly payment through one of the programs. (ECF No. 41 ¶ 57.) Plaintiffs allege that in order to make these payments, "Plaintiffs had to give up payments on their insurance policies for Long Term Care." (ECF No. 41 ¶ 58.)

Plaintiffs allege they became frustrated that their monthly payment had not been reduced to $1,700 although SPS received the $16,000 from KYHC, and Plaintiffs allege they "protested by not making the December 2012 or January 2013 payment." (ECF No. 41 ¶ 59.) Plaintiffs allege Shrowder asked Plaintiffs what payment they could afford and Plaintiffs told her $1,700 per month. (ECF No. 41 ¶ 60.) Plaintiffs allege Shrowder, on behalf of SPS and Wells, placed Plaintiffs in a six-month forbearance plan whereby Plaintiffs "would pay $1,700 per month pending further response to the above described agreements and promises, as well as the in house permanent modification which had been promised." (ECF No. 41 ¶ 61.) "Plaintiffs made the 'forbearance' payments beginning February 2013 not only for 6 months but continuously thereafter through September 2014." (ECF No. 41 ¶ 62.)

Plaintiffs allege that in January 2013, "Shrowder told them [Wells] was still becoming a participant in the KYHC $100,000 principal reduction program and through it [P]laintiffs would be eligible for an $84,000 reduction since they had already received the $16,000 payment." (ECF No. 41 ¶ 63.) Plaintiffs allege Plaintiffs were informed in September 2013 that Wells had become a participant in the KYHC principal reduction program and Plaintiffs "assumed" the monthly mortgage payment "would now be reduced to $1,700." (ECF No. 41 ¶ 64.)

Plaintiffs allege they immediately applied for the principal reduction through KYHC as SPS instructed them to do. (ECF No. 41 ¶ 65.) Plaintiffs allege KYHC informed Plaintiffs in October 2013 "they were approved pending documentation from SPS." (ECF No. 41 ¶ 66.) Plaintiffs allege "SPS delayed providing the required information KYHC demanded of SPS in order to fund the principal reduction which resulted in KYHC in May 2014 denying [P]laintiffs the $84,000 balance which would have been applied to [P]laintiffs loan and would have resulted in a principal reduction in which the monthly payment would have consequently been reduced to $1,700." (ECF No. 41 ¶ 67.) Plaintiffs allege "since May 2014 SPS and [Wells] have wrongfully refused to place [Plaintiffs] in a HAMP modification which they are qualified to enter into at the $1,700 monthly payment rate and instead wrongfully offered to place them into trial payments at the approximate $2,200 per month rate." (ECF No. 41 ¶ 68.)

///

Plaintiffs assert six causes of action in their Second Amended Complaint ("SAC"): (1) Intentional Misrepresentation; (2) Negligent Misrepresentation; (3) Breach of Contract; (4) Negligence; (5) Intentional Infliction of Emotional Distress ("IIED"); and (6) Violations of Business and Professions Code § 17200, *et seq.* (ECF No. 41 ¶¶ 78 –156.) Defendants move to dismiss the third and fifth causes of action for failure to state a claim. (ECF No. 43 at 1.)

## II. PROCEDURAL HISTORY

Plaintiffs filed their Complaint in the Superior Court of Placer County. (ECF No. 1-1 at 4.) Defendants removed the case to this Court and moved to dismiss. (ECF Nos. 1, 6.) Before the Court ruled, Plaintiffs filed their First Amended Complaint. (ECF No. 26.) Defendants filed a Motion to Dismiss, which the Court granted in part and denied in part. (ECF Nos. 30, 38). Plaintiffs then filed their SAC. (ECF No. 41.) Defendants filed the instant Motion to Dismiss. (ECF No. 43.) Plaintiffs have opposed and Defendants replied. (ECF Nos. 47, 49.)

## III. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim…is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege " 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement

to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the…laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

///

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Federal Rule of Civil Procedure 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

**IV.    ANALYSIS**

Defendants argue that Plaintiffs' third cause of action, for breach of contract, and fifth cause of action, for intentional infliction of emotional distress, should be dismissed for failure to state a claim. (ECF No. 43.)

        A.    <u>Breach of Contract</u>

Defendants argue they are not liable for any conduct by BOA before Defendants purchased Plaintiffs' mortgage from BOA because Defendants do not have successor liability for BOA's actions. (ECF No. 43 at 10.) Defendants also argue Plaintiffs' allegations show Plaintiffs did not perform on the contract that Plaintiffs allege existed to modify their mortgage and, therefore Defendants cannot be liable for breaching an alleged contract on which Plaintiffs themselves did not perform and were in default. (ECF No. 43 at 11–12.) Finally, Defendants argue Plaintiffs allegations indicate this claim is premised on an oral promise, and under California law modifications to mortgages must be in writing to be enforceable. (ECF No. 43 at 11.)

///

///

///

9

### i. *Successor Liability*

Plaintiffs argue Defendants are liable for failing to fulfill a mortgage modification Plaintiffs allege that Plaintiffs and BOA agreed to in November 2011 but did not complete before Defendants purchased Plaintiffs' mortgage from BOA. (ECF No. 47 at 5–6.)

"Successor liability applies if (1) the successor expressly or impliedly agrees to assume the subject liability ..., (2) the transaction amounts to a consolidation or merger of the successor and the predecessor, (3) the successor is a mere continuation of the predecessor, or (4) the transfer of assets to the successor is for the fraudulent purpose of escaping liability for the predecessor's debts." *Tinker v. Aurora Loan Servs.*, 2015 WL 1540579, at *6 (E.D. Cal. Apr. 7, 2015) (quoting *City of Los Angeles v. Wells Fargo & Co.,* 2014 WL 2206368 (C.D. Cal. May 28, 2014)).

Defendants argue Plaintiffs "merely conclude" Defendants are liable for BOA's conduct, but do not plead any facts to support that conclusion. (ECF No. 43 at 10.) Plaintiffs argue Defendants are "liable for the breach of the agreement by [BOA] to modify" Plaintiffs' mortgage because Defendants acquired and benefited from the ownership and servicing of the underlying mortgage. (ECF No. 47 at 6.) Additionally, Plaintiffs argue Defendants impliedly acquiesced to the terms of that modification when Defendants informed Plaintiffs that Defendants were working to become participants in KYHC principal reduction program and would modify Plaintiffs' mortgage. (ECF No. 47 at 6–7.)

Plaintiffs conflate two agreements, the underlying mortgage which defendants acquired, serviced, and benefited from, and a modification agreement Plaintiffs allege they and BOA were working to close prior to BOA selling Plaintiffs' mortgage to Defendants. Plaintiffs cite no authority to support their argument that Defendants are bound to process a mortgage modification allegedly begun by another owner or servicer because Defendants acquired, serviced, and benefited from the underlying mortgage. Defendants' ownership of Plaintiffs' mortgage does not make Defendants liable for any alleged breach of a different agreement for a modification by the previous owner of the mortgage. *Tinker*, 2015 WL 1540579 at *6 ("That Nationstar now owns the property does not make it liable for Aurora's alleged misrepresentations.").

10

Further, Plaintiffs do not explain how Defendants "impliedly acquiesced" to the terms of an alleged mortgage modification agreement between Plaintiffs and BOA where Plaintiffs also allege Defendants informed Plaintiffs that Defendants would not honor the alleged modification agreement because Defendants were not participants in the KYHC principal reduction program on which the agreement depended. (ECF No. 41 ¶ 44.) Nor have Plaintiffs cited authority to support their argument that Defendants "impliedly acquiesced" to the terms of the alleged modification agreement with BOA because Defendants informed Plaintiffs that if Defendants became eligible for the KYHC principal reduction program then Defendants would work with Plaintiffs toward a modification and that a $1,700 monthly payment was "possible." (ECF No. 47 at 6) (citing ECF No. 41 ¶ 53–55).

Plaintiffs' conclusory statements are insufficient for any plausible successor liability theory under which Defendants are liable for any conduct or alleged wrongdoing by BOA. *Silva v. Saxon Mortg. Servs. Inc.*, 2012 WL 2450709, at *4 (E.D. Cal. June 26, 2012) (finding the plaintiffs' "blanket allegation" the defendant was a successor-in-interest to the prior lender, unsupported by any factual allegations and with no suggestion of an agency relationship, was insufficient to plausibly demonstrate the defendant was a successor-in-interest). Accordingly, the Court will only consider Defendants' conduct, not BOA's, in deciding the instant motion.

### ii. Performance

Defendants argue Plaintiffs' breach of contract claim regarding the mortgage modification fails because Plaintiffs have not pled they performed as required for the modification by making all payments or pled sufficient excuse for nonperformance. (ECF No. 43 at 11–13.) Plaintiffs argue Defendants waived any argument regarding Plaintiffs failure to perform by accepting partial payments after Plaintiffs skipped the two monthly payments. (ECF No. 47 at 7–8.)

"Under California law, a plaintiff alleging a breach of contract must prove 'the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant, and damages.'" *Gustafson v. U.S. Bank, Nat'l Ass'n*, 2017 WL 4769441, at *3 (C.D. Cal. Jan. 4, 2017) (citing *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731 (2001)).

11

Defendants note Plaintiffs' allege Defendants told Plaintiffs they must make the required monthly payments to keep current on their existing mortgage to qualify for a modification. (ECF No. 43 at 11) (citing ECF No. 41 ¶ 53, alleging Defendants told Plaintiffs "they had to stay current on and pay $1,952.56 monthly payment beginning April 1, 2012"). Defendants add Plaintiffs also allege they failed to make the required monthly payments at two separate times. (ECF No. 43 at 11–12.) First, Plaintiffs allege they skipped two monthly payments of $1,952.56, in December 2012 and January 2013, as a form of protest because Plaintiffs believed the modification process was taking too long. (ECF No. 41 ¶ 59.) Plaintiffs allege Defendants responded by offering them a six-month forbearance program from February through July 2013, during which Plaintiffs could make payments of $1,700 "pending further response" to their concerns about the modification process. (ECF No. 41 ¶ 61.) Then, Plaintiffs allege they made only partial payments of $1,700 per month until September 2014, about a year after the end of the six-month forbearance period, without Defendants' agreement because Plaintiffs "assumed" their payment would be reduced to that amount. (ECF No. 41 ¶¶ 62, 64.)

Plaintiffs argue Defendants' acceptance of the $1,700 forbearance payments after Plaintiffs skipped two monthly payments "acts as a waiver of any argument that Plaintiffs failed to perform" as required for a modification and stay current on their mortgage payments. (ECF No. 47 at 7.) "Waiver occurs when there is 'an existing right, a knowledge of its existence, and an actual intention to relinquish it, or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.'" *Mardirosian v. Lincoln Nat. Life Ins. Co.*, 739 F.2d 474, 477 (9th Cir. 1984) (determining an insurance company may have waived an automatic lapse provision when it deposited a check for payment in full of back premiums and only later notified the insured it cancelled the policy and returned payment to her) (quoting *Silva v. Nat'l Am. Life Ins. Co.*, 58 Cal. App. 3d 609, 615 (Ct. App. 1976) (finding waiver is generally a question of fact unless the only reasonable inference is to the contrary, and determining a letter the insurance company sent to its prior client was an attempt to negotiate reinstatement of a lapsed policy and not waiver of the automatic lapse of the policy for nonpayment)).

Case law does not support Plaintiffs' position that Defendants waived any argument for non-performance of a modification agreement by allowing Plaintiffs to make forbearance payments for six months after Plaintiffs skipped two payments. Plaintiffs have not cited authority that supports their argument that this indicates an actual intention by Defendants to waive their right or is so inconsistent with any intent to enforce their rights as to relinquish it. Plaintiffs have not alleged they made or offered to make back payments as both the plaintiffs in *Silva* and *Mardirosian* did and Plaintiffs allege they were never able to do so. (ECF No. 41 ¶¶ 58, 60.)

Further, Plaintiffs allege they also failed to make full payments after the end of the forbearance period. (ECF No. 41 ¶ 62.) "[I]t is elementary that one party to a contract cannot compel another to perform while he himself is in default." *Chase v. Residential Credit Sols., Inc.*, 2016 WL 7469604, at *9 (C.D. Cal. Mar. 28, 2016) (finding the plaintiff's allegations that he breached the terms of the modification by failing to make all payments required during the modification trial payment plan precluded his breach of contract claim) (quoting *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1367 (Cal. Ct. App. 2010). Plaintiffs do not allege Defendants extended the forbearance period or excused their failure to make full payments. Plaintiffs' only argument for failing to make the full monthly payments after the forbearance period is that they "assumed" their payment would be reduced in the future on learning Defendants had become participants in KYHC's principal reduction program. (ECF No. 41 ¶ 64.) However, Plaintiffs also allege SPS did not confirm a permanent reduction or modification, only a six-month forbearance, and that SPS told Plaintiffs "modification would take place independent of…entry by SPS into the [KYHC] principal reduction program." (ECF No. 41 ¶¶ 55, 61.)

Plaintiffs allege they did not perform a condition for the modification agreement after forbearance, do not allege a sufficient excuse for not performing, and have not alleged facts sufficient to show Defendants waived the right to argue Plaintiffs failed to perform. Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action.

### iii. Statute of Frauds

Defendants argue Plaintiffs' allegations of an oral promise to modify their loan is not enforceable because an agreement to modify a mortgage must be in writing, (ECF No. 43 at 11),

13

and because a promise must be "clear and unambiguous" so courts know what terms to enforce, (ECF No. 43 at 13). Plaintiffs argue they signed a modification agreement with BOA in November 2011, the "pink slip," and Defendants assumed liability for that modification agreement when they purchased Plaintiffs' mortgage from BOA shortly after. (ECF No. 47 at 5.)

As discussed in the Successor Liability section, above, Plaintiffs have not alleged sufficient facts to show Defendants have successor liability for any actions by BOA. However, the Court, below, grants Plaintiffs' leave to amend their complaint. Plaintiffs may be able to allege sufficient facts in their amended complaint to support the existence of a written modification agreement with BOA and their theory of Defendants' successor liability for actions or agreements by BOA. Because the Court cannot know whether Plaintiffs will allege sufficient facts if they chose to amend their complaint as to these causes of action, the Court will not address Defendants' statute of frauds argument at this time.

        B.      <u>Intentional Infliction of Emotional Distress</u>

Defendants argue that Plaintiffs' IIED claim fails to state a claim because Plaintiffs do not allege extreme or outrageous conduct or sufficiently identify the harm they suffered. (ECF No. 43 at 13–14.) Plaintiffs argue that they adequately alleged that Defendants' conduct exceeded all bounds of decency, which caused them to suffer emotional distress. (ECF No. 47 at 10, 12.)

The elements for the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant with the intention of causing, or with reckless disregard of the probability of causing, emotional distress; (2) plaintiff suffered severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by defendant's outrageous conduct. *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009). "The conduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1124 (E.D. Cal. Feb. 18, 2014). "Severe emotional distress means 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.'" *Bassam v. Bank of Am.*, 2015 WL 4127745, at *10 (C.D. Cal. July 8, 2015).

Plaintiffs have not shown they suffered severe or extreme emotional distress sufficient to satisfy the second element. Plaintiffs merely state they "suffered emotional distress resulting in doctor's visits, psychological testing, and medication." (ECF No. 41 ¶ 141.) "Facts need to be alleged that indicate the nature or extent of any mental distress suffered as a result of the alleged outrageous conduct." *Hamilton v. Prudential Fin.*, 2007 WL 2827792, at *4 (E.D. Cal. Sept. 27, 2007) (finding the plaintiff's statements that he suffered depression, frustration, nervousness, and anxiety, to be conclusory and lacking the necessary specific facts to satisfy this element). Plaintiffs assert they can provide additional detail to satisfy this element, "including complications related to inability to sleep, inability to concentrate at work, feeling of helplessness and inability to care and protect their family as well as other physical ailments," if given leave to amend. (ECF No. 47 at 12–13.)

Regarding the first element, Plaintiffs do not allege sufficient facts to show Defendants engaged in conduct which is extreme or outrageous. A creditor's conduct in attempting to collect a debt is outrageous, as required to support a claim for IIED, only if it exceeds all reasonable bounds of decency. *Flores*, 997 F. Supp. 2d at 1124. "An assertion of legal rights in pursuit of one's own economic interests does not qualify as 'outrageous' under this standard," and is privileged even if it causes distress. *Id.* (citing *Yu v. Signet Bank/Virginia*, 69 Cal.App.4th 1377, 82 Cal. Rptr. 2d 304 (1999). "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment." *Id.* "Whether conduct is outrageous is usually a question of fact." *Hawkins v. Bank of Am. N.A.*, 2017 WL 590253, at *5 (E.D. Cal. Feb. 14, 2017) (citing *Ragland*, 209 Cal. App. 4th at 204.) However, when a plaintiff alleges "no conduct of defendants outside that generally accepted in loan servicing and/or foreclosure," the claim fails. *Flores*, 997 F. Supp. 2d at 1124.

Plaintiffs rely on *Ragland*, in which the court denied summary judgment to the defendant bank where the plaintiff alleged that the bank induced "her to skip the April loan payment, refus[ed] later to accept loan payments, and [sold] her home at foreclosure." *Ragland*, 209 Cal. App. 4th at 204. The instant case is distinguishable from *Ragland*.

15

Plaintiffs allege Defendants "encouraged Plaintiffs to not make payments" to increase arrearages and fees. (ECF No. 41 ¶ 140.) Plaintiffs, however, also allege Defendants repeatedly instructed Plaintiffs to pay Defendants the full amount Plaintiffs owed. (ECF No. 41 ¶¶ 53–54, 140.) Although Plaintiffs do allege Defendants agreed to allow Plaintiffs a six-month forbearance period in which Plaintiffs would pay $1,700 monthly, Plaintiffs allege Defendants only agreed to this period after Plaintiffs skipped two monthly payments. (ECF No. ¶¶ 59, 61.) Plaintiffs allege they continued to pay the lower amount even after the forbearance period ended. (ECF No. 41 ¶ 62.) Plaintiffs do not allege Defendants refused to accept full payments or, as was the case in *Ragland*, refused to accept a make-up payment for a skipped or reduced payment.

Plaintiffs argue Defendants encouraged Plaintiffs to apply for $16,000 through KYHC, apply for a HAMP modification, continue to make payments in full while Wells worked to become a participant in KYHC, and apply for an in-house modification Defendants never intended to grant. (ECF No. 41 ¶ 140.) However, Plaintiffs also allege their account was credited $16,000 received through KYHC and brought "current" through that payment. (ECF No. 41 ¶ 63.) Plaintiffs argue they never received a HAMP or in-house modification, but Plaintiffs are not entitled to a modification of the terms of their loan. *Shumake v. Caliber Home Loans, Inc*, 2017 WL 1362681, at *11 (C.D. Cal. Jan. 6, 2017) (finding the "defendants' alleged failure to provide a loan modification package cannot constitute extreme and outrageous conduct"); *see also Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 884 (N.D. Cal. 2010) (lender's foreclosure, alleged certified mail failure, and refusal to modify the plaintiff's loan were not outrageous acts to justify an IIED claim or indicative of bad faith). Plaintiffs conclude Defendants acted in bad faith and never intended to grant a modification but do allege any facts to support their conclusion. A pleading is insufficient if it offers "labels and conclusions" or a "recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Plaintiffs have not alleged sufficient facts to meet the first two elements, therefore, Plaintiffs have also not shown the third element, that Defendants outrageous conduct actually and proximately caused Plaintiffs' severe emotional distress. Accordingly, the Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Fifth Cause of Action.

## V. LEAVE TO AMEND

Plaintiffs request leave to amend. (ECF No. 47 at 13.) "Although a district court should freely give leave to amend when justice so requires, the court's discretion to deny such leave is particularly broad where the plaintiff has previously amended its complaint." *Ecological Rights Found. v. Pacific Gas and Elec. Co.*, 713 F.3d 502 (9th Cir. 2013) (internal citations and quotation marks omitted). Plaintiffs have already had three opportunities to present their claims, one of which came after the Court ruled on Defendants' earlier motion to dismiss. The Court cannot, however, say Plaintiffs claims for breach of contract or IIED cannot be saved by the allegation of additional facts in an amended complaint and so Plaintiffs will have one final opportunity to amend these causes of action as to these two defendants, SPS and Wells. *Jewel v. Nat'l Sec. Agency,* 673 F.3d 902, 907 n.3 (9th Cir. 2011) ("Dismissal without leave to amend is improper unless it is clear…that the complaint could not be saved by any amendment."). Accordingly, the Court GRANTS Plaintiffs request for leave to amend their Third and Fifth causes of action as to these Defendants.

## VI. CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendants' Motion to Dismiss Plaintiffs' Third and Fifth Causes of Action (ECF No. 43). The Court GRANTS Plaintiffs' leave to amend within 30 days of the date of this Order.

IT IS SO ORDERED.

Dated: March 27, 2018

Troy L. Nunley
United States District Judge

17