UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PENNY DOUGHERTY and DENNIS DOUGHERTY,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.; WELLS FARGO BANK, N.A., as trustee, on behalf of the holders of the HarborView Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2006-12; and SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendants. | No. 2:15-cv-01226-TLN-CKD<br><br>**ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS** |

This matter is before the Court pursuant to Defendant Bank of America's ("Defendant") Motion to Dismiss. (ECF No. 45.) Plaintiffs Penny and Dennis Dougherty ("Plaintiffs") oppose the Motion. (ECF No. 46.) Defendant filed a reply in support of its motion. (ECF No. 48.) For the reasons discussed below, the Court hereby DENIES in part and GRANTS in part Defendant's Motion to Dismiss (ECF No. 45).

///

///

///

1

## I. FACTUAL BACKGROUND

Plaintiffs allege Defendant breached an agreement to modify Plaintiffs' residential mortgage. (ECF No. 41 ¶¶ 1–2.) The residence which secures the mortgage is located at 5130 Fruitvale Road, Newcastle, California 95658 ("Property"). (ECF No. 41 ¶ 2.)

Plaintiffs allege that in November 2006 they refinanced their mortgage in the amount of $458,000 with Aegis Wholesale Corporation. (ECF No. 41 ¶ 12.) Plaintiffs allege their mortgage was a jumbo non-conforming adjustable rate negative amortization mortgage. (ECF No. 41 ¶ 14.) Plaintiffs allege their monthly payment was $1,775, starting in January 2007. (ECF No. 41 ¶ 14.)

Plaintiffs allege they were first instructed to make their monthly payments to an entity known as Countrywide, and then to BAC Home Loans Servicing, LP, a subsidiary of Defendant.[1] (ECF No. 41 ¶¶ 15–16.) Plaintiffs allege Defendant's agent told Plaintiffs there was no modification program available for them since they were current on their payments. (ECF No. 41 ¶ 18.) Plaintiffs allege they regularly asked Defendant about converting to a fixed rate mortgage but were told there was no program, modification, refinance, or restructure available because they were current and not in default. (ECF No. 41 ¶ 19.)

Plaintiffs allege their monthly payment to Defendant was $1770 from September through December 2009. (ECF No. 41 ¶ 21.) Plaintiffs allege that in January 2010, their payment increased to $1880 for two months and then to $1850 for three months. (ECF No. 41 ¶ 22.) Plaintiffs allege they did not make the July 2010 payment. (ECF No. 41 ¶ 24.) Plaintiffs allege they contacted Defendant to notify Defendant of the missed payment and apply for a modification but were told no modification was available despite the missed payment. (ECF No. 41 ¶ 25.)

Plaintiffs allege that from August 2010 through September 2011 they made monthly payments of only $1700, rather than paying the $1850 per month due. (ECF No. 41 ¶¶ 26, 28.) Plaintiffs allege that in September 2011, Defendant returned Plaintiffs' $1700 payment and informed Plaintiffs that Defendant would no longer accept payments below $1952.56 per month. (ECF No. 41 ¶ 32.) Plaintiffs allege they made monthly payments of $1952.56 in October and November 2011. (ECF No. 41 ¶ 33.)

---

[1] For clarity, the Court will refer to BAC Home Loans Servicing, LP and Defendant as "Defendant".

Plaintiffs allege Defendant invited Plaintiffs to attend an event at the Sacramento Convention Center on November 15, 2011, to apply for a modification. (ECF No. 41 ¶ 34.) Plaintiffs allege Defendant's agent told Plaintiffs they qualified for and would receive a modification which would reduce their payment to $1700 per month once Defendant received $100,000 from the Keep Your Home California Program (KYHC) for which Plaintiffs qualified. (ECF No. 41 ¶ 35.) Plaintiffs allege they signed a pink form with the modification terms but never received a copy of that form. (ECF No. 41 ¶ 35.) Plaintiffs allege the written modification required monthly payments of just over $2000. (ECF No. 41 ¶ 35.) Plaintiffs allege Defendant's agent told Plaintiffs Defendant would send them final documents to sign. (ECF No. 41 ¶ 35.)

Plaintiffs allege they agreed to the modification with payments over $1700 per month, "because [Defendant's] agent told [Plaintiffs] there was a program known as KYHC that would give [Defendant] $100,000 towards a reduction of their mortgage principle, which would then result in a lower monthly payment down to about $1700 per month." (ECF No. 41 ¶¶ 37–38.) Plaintiffs allege Defendant's agent directed Plaintiffs to a KYHC table to apply for $100,000 from the KYHC Principle Reduction Program. (ECF No. 41 ¶ 39.) Plaintiffs allege they submitted the required forms online, the KYHC representative told Plaintiffs to expect funding of the $100,000 to Defendant within six weeks, and Defendant's representative told Plaintiffs their first $1700 monthly payment would begin in or about January 2012. (ECF No. 41 ¶¶ 40–41.)

Plaintiffs allege that on November 30, 2011, Defendant sent Plaintiffs a letter stating the mortgage had been sold to a new entity and Select Portfolio Servicing ("SPS") would be the servicer. (ECF No. 41 ¶ 42.) Plaintiffs allege they were not informed that neither SPS nor the new entity would honor the KYHC principle reduction or modification. (ECF No. 41 ¶ 42.)

Plaintiffs assert Defendant induced Plaintiffs to enter into a long, fruitless modification process and Plaintiffs incurred penalties, fees, costs, and a lower credit score. (ECF No. 41 ¶ 93.) In short, Plaintiffs assert (i) Defendant's statement Plaintiffs had to be behind on their payments to qualify for a modification was misleading and inaccurate, and (ii) Defendant failed to ensure the new entity and SPS honored the modification Defendant and Plaintiffs agreed to in November 2011, or ensure Plaintiffs would receive funds from the KYHC principle reduction program.

## II. PROCEDURAL HISTORY

Plaintiffs filed their case in the Superior Court of Placer County, and the case was then removed to this Court. (ECF No. 1 at 1–2, ¶ 1.) Defendant moved to dismiss, but before the Court ruled Plaintiffs filed a First Amended Complaint ("FAC"). (ECF Nos. 14, 20, 26.) Defendant moved to dismiss the FAC, which the Court granted in part and denied in part. (ECF Nos. 28, 38.) Plaintiffs then filed a Second Amended Complaint ("SAC") asserting six claims: (1) Intentional Misrepresentation; (2) Negligent Misrepresentation; (3) Breach of Contract; (4) Negligence; (5) Intentional Infliction of Emotional Distress; and (6) Violations of Business and Professions Code § 17200, *et seq*. (ECF No. 41.) Defendant filed the instant Motion to Dismiss. (ECF No. 45.) Plaintiffs opposed and Defendant replied. (ECF Nos. 46, 48.)

## III. STANDARD OF LAW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege " 'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant–unlawfully–harmed–me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the … laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff has failed to "nudge[] [his or her] claims . . . across the line from conceivable to plausible[,]" is it proper to dismiss. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context–specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

If a complaint fails to state a plausible claim, " '[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.' " *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a) (2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

## IV. ANALYSIS[2]

### A. Breach of Contract (Third Claim)

Plaintiffs allege Defendant breached their modification agreement by failing to grant Plaintiffs a permanent modification in accordance with the terms of that agreement. (ECF No. 41 ¶ 122.) Defendant moves to dismiss Plaintiffs' claim for breach of contract on three grounds: the claim is barred by the statute of frauds, Plaintiffs fail to allege the agreement contained essential terms required, and Plaintiffs fail to sufficiently allege damages. (ECF No. 45 at 15–16.)

Defendant argues Plaintiffs' claim is barred by the statute of frauds because they failed to "produce a written modification setting forth their mortgage." (ECF No. 45 at 15.) "Under California law, an agreement to modify a mortgage loan must be in writing and signed by the party to be charged, otherwise it is subject to the Statute of Frauds." *Villanueva v. Select Portfolio Servs., Inc.*, 2015 WL 2199340, at *3 (N.D. Cal. May 11, 2015) (citing *Clark v. Countrywide Home Loans, Inc.,* 732 F. Supp. 2d 1038, 1043 (E.D. Cal. 2010)). Plaintiffs pled the existence of a signed written modification agreement, the "pink form," which Plaintiffs allege contained the terms of that agreement, though Plaintiffs did not receive a copy. (ECF No. 41 ¶¶ 120–22.) Taking Plaintiffs' allegations as true, a written modification agreement exists and this claim is not barred by the statute of frauds.

Defendant argues Plaintiffs failed to allege that the modification agreement contained all the essential terms required. (ECF No. 45 at 15–16.) Defendant argues Plaintiffs' allegation that Defendant promised to reduce Plaintiffs' payment to $1,700 monthly, in writing, does not contain all essential terms, because Plaintiffs do not allege the principal amount, interest rate, whether the rate was fixed or adjustable, escrow amounts, or amortization schedule. (ECF No. 45 at 16.)

---

[2] Defendant moves to dismiss Plaintiffs' first, second, and fourth claims for intentional misrepresentation, negligent misrepresentation, and negligence as time barred and insufficiently pled. (ECF No. 45 at 10–17.) Defendant previously moved to dismiss these claims on the same bases in its motion to dismiss Plaintiffs' FAC. (ECF No. 28 at 13–17.) Plaintiffs have not amended these claims from their FAC. (*See* ECF Nos. 26, 41.)

The proper vehicle for asking a court to reconsider its prior ruling is a motion for reconsideration. E.D. Cal. L. R. 230(j). Even if the Court were to construe Defendant's motion as a motion for reconsideration, it would not grant it. Local Rule 230(j) requires that a motion for reconsideration state "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what grounds exist for the motion," and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal. L. R. 230(j)(3)-(4). Defendant's motion does not describe new or different facts or circumstances that warrant reconsideration of the Court's prior order (ECF No. 38).

"[A] contract is void and unenforceable where a contract is so uncertain and indefinite that the intention of the parties on material questions cannot be ascertained." *Lazo v. Bank of Am., N.A.*, 2012 WL 1831577, at *5 (N.D. Cal. May 18, 2012) (citing *Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 552 (N.D. Cal. May 9, 2012)). "[W]here a contract involves a loan it should include the identity of the lender and borrower, the amount of the loan, and the terms for repayment in order to be sufficiently definite." *Id*. However, the California Supreme Court has stated "that the destruction of contracts on the basis of indefiniteness is disfavored and therefore, courts should, if feasible, construe agreements as to carry into effect the reasonable intentions of the parties if [they] can be ascertained." *Id*. (internal citation and quotation marks omitted).

Plaintiffs allege the written modification, the "pink form," contained the modification terms, but Plaintiffs were never given a copy so cannot provide those details until they obtain the document through discovery. (ECF No. 41 at 7.) Plaintiffs provide details they do remember. Plaintiffs allege Defendant was the lender, they were the borrowers, the principal amount would be their balance less $100,000 — once Defendant received that amount from the KYHC principal reduction program, and the repayments terms were $2,000 per month until Defendant received the KYHC money, at which point Plaintiffs' permanent modification would result in monthly payments of $1,700, starting around January 2012. (ECF No. 41 at 6–7.) Taking these allegations as true, the terms Plaintiffs remember and have pled are sufficiently definite terms. *Lazo*, 2012 WL 1831577 at *5.

Defendant also argues Plaintiffs failed to allege sufficient damages because Plaintiffs do not allege they made payments, paid fees, or lost money beyond what they already owe Defendant under the terms of Plaintiffs' existing mortgage. (ECF No. 45 at 16.) However, courts have found allegations of adverse credit consequences sufficient to state a claim for breach of contract. *See Sutcliffe*, 283 F.R.D. at 553 (finding the plaintiff's allegations of adverse credit consequences satisfied the damages requirement for a breach of contract claim). Plaintiffs allege their credit has been damaged, and that they have been charged arrears, fees, and penalties. (ECF No. 41 ¶ 123.) Plaintiffs' sufficiently allege damages to support a breach of contract claim.

Accordingly, the Court DENIES Defendant's Motion to Dismiss Plaintiffs' third claim.

7

B.     IIED (Fifth Claim)

Plaintiffs assert Defendant intentionally, recklessly caused Plaintiffs emotional distress by falsely telling Plaintiffs they were not eligible for a mortgage modification while not in default, starting a modification process it knew it would not complete, and selling Plaintiffs' mortgage to a lender that could not complete their modification through KYHC. (ECF No. 41 ¶ 138–39.)

The elements of a claim for IIED under California law are: (1) Extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) resulting severe or extreme emotional distress by the plaintiff; (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013).

Defendant argues Plaintiffs failed to plead sufficient facts showing Defendant engaged in "extreme and outrageous" conduct. (ECF No. 45 at 18.) "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id.* (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965 (1993). "An assertion of legal rights in pursuit of one's own economic interests does not qualify as 'outrageous.'" *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1124 (E.D. Cal. 2014) (citing *Yu v. Signet Bank/VA*, 69 Cal. App. 4th 1377 (1999)). While "'outrageous conduct' is generally a fact question, a court may dismiss a claim if the allegations could not sustain such a finding." *Farren v. Select Portfolio Servicing, Inc.*, 2017 WL 1063891, at *5 (E.D. Cal. March 20, 2017).

Plaintiffs rely on *Ragland v. U.S. Bank National Assn.*, 209 Cal. App. 4th 182 (2012), which found that the plaintiff's allegations that the defendant induced her to skip payments, later refused to accept payments or back payments from her, and then unlawfully foreclosed on the plaintiff's home, constituted extreme and outrageous conduct. *Id.* at 204–05. *Ragland* is distinguishable. Here, Plaintiffs allege Defendant improperly stated they were not eligible for a mortgage modification, at least in part because they were current on payments. (ECF No. 41 ¶ 139.) Plaintiffs do not allege Defendant told them to skip payments or refused to accept make-up payments, nor do Plaintiffs allege Defendant unlawfully foreclosed on the Property as the plaintiff alleged in *Ragland*. Plaintiffs are still living on the Property (ECF No. 73 at 11).

8

Additionally, Defendant's sale of Plaintiffs' mortgage to another lender after the alleged modification agreement, one that could not process the modification with the KYHC program, does not constitute extreme and outrageous conduct. Defendant's decision that selling Plaintiffs' mortgage was in Defendant's best interest does not fall outside accepted debt collection practices or constitute extreme or outrageous conduct. *Fletcher v. Western Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376, 395 (1970) (stating creditors enjoy a qualified privilege to pursue and protect their own economic interests by asserting their legal rights despite the substantial certainty that doing so will cause emotional distress to the debtor); *Ross v. Creel Printing & Publishing Co., Inc.*, 100 Cal. App. 4th 736, 745 (2002). Courts have dismissed IIED claims where the plaintiff alleges the defendant's negligent behavior even led to a wrongful foreclosure. *Farren*, 2017 WL 1063891 at *5 (finding the defendants were not alleged to have engaged in the kind of trickery presented in the *Ragland* case and dismissing the plaintiff's IIED claim). Here, neither Defendant nor the new lender foreclosed on Plaintiffs, rather Defendant sold the mortgage and Plaintiffs were not able to continue with the modification they allege they and Defendant agreed to pursue. Defendant's pursuit of its economic interest does not constitute extreme or outrageous conduct. *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998); *Flores*, 997 F. Supp. 2d at 1124. Plaintiffs also allege Defendant knew or should have known it would sell the mortgage and not complete the modification, however, Plaintiffs do not allege any facts to support their conclusion.

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' fifth claim, with leave to amend this claim within 21 days of the date of this Order.

          C.        <u>Violations of Business and Professions Code § 17200 *et seq*. (Sixth Claim)</u>

Plaintiffs' assert a claim for violation of California's Business and Professions Code § 17200, its "Unfair Competition Law" or "UCL", based on Defendant's conduct during the modification process. (ECF No. 41 at 29.) To state a claim for unfair competition, a plaintiff need only meet one of three criteria, a violation of another law when committed pursuant to business activity, a business practice deemed unfair even if not unlawful, or a fraudulent business practice if the public is likely to be deceived. *Meixner v. Wells Fargo Bank, N.A.*, 101 F. Supp. 3d 938, 959–60 (E.D. Cal. April 24, 2015) (internal citations omitted).

Defendant argues Plaintiffs fail "to allege a single statutory violation or any underlying claim…[or] unlawful conduct under the UCL," upon which to premise their UCL claim. (ECF No. 45 at 20–22.) As discussed above, Plaintiffs have adequately pled intentional misrepresentation, negligent misrepresentation, negligence, and breach of conduct. Plaintiffs allegations are sufficient to support a claim under the "unlawful" prong of § 17200, thus Plaintiffs meet the requirements of the UCL. *Meixner*, 101 F. Supp. 3d at 959.

Defendant also argues Plaintiffs lack standing under §17204 because they fail to demonstrate they lost any amount of money, or any specific property, as a result of Defendant's actions. (ECF No. 45 at 15.) A UCL claim may be brought "by a person who has suffered injury in fact and has lost money or property as a result of unfair competition." CAL. BUS. & PROF. CODE § 17204. "Where the alleged harm is economic injury, injury in fact and loss of money are one in the same." *See Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1348 (2009); see also *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 325 (2011). Further, "'[d]amage to credit' is a 'loss of money or property' within the meaning of the UCL." *Rex v. Chase Home Finance LLC*, 905 F. Supp. 2d 1111, 1147 (C.D. Cal. Nov. 9, 2012) (citing *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010)). Plaintiffs allege their injuries include late fees, damage to their credit score, and the lost opportunity to participate in KYHC's principal reduction program, (ECF No. 41 ¶¶ 93, 97, 114, 136), which is the type of loss protected under the UCL. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiffs' sixth claim.

## V. CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Dismiss Plaintiffs' Third and Sixth claims, and the Court GRANTS Defendant's Motion to Dismiss Plaintiffs' Fifth claim, with leave to amend Plaintiff's IIED claim as to this Defendant within 21 days of the date of this Order.

IT IS SO ORDERED.

Dated: March 29, 2018

Troy L. Nunley
United States District Judge